No. 23-4058

# UNITED STATES DISTRICT COURT OF APPEALS FOR THE TENTH CIRCUIT

## KRISTIN JACOBS, legal guardian of E.J.; AMANDA SANDY, legal guardian of H.S.; and DISABILITY LAW CENTER

*Plaintiffs-Appellants*

*v.*

## SALT LAKE CITY SCHOOL DISTRICT; and BOARD OF EDUCATION OF SALT LAKE CITY SCHOOLS

*Defendants-Appellees*

On Appeal From The United States District Court For The District Of Utah, Case No. 2:21-cv-00706-JNP-CMR, The Honorable Jill N. Parrish, District Judge

## <u>BRIEF OF APPELLEES</u>

Joan M. Andrews (7803)
Matthew S. Brahana (13154)
FABIAN VANCOTT
95 S. State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jandrews@fabianvancott.com
mbrahana@fabianvancott.com
*Attorneys for Defendants-Appellees Salt Lake City School District and Board of Education of Salt Lake City Schools*

**Oral Argument Requested**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee the Board of Education of Salt Lake City Schools (the "Board") states that pursuant to Utah Code § 53G-4-401, the Board is a body corporate, defined as a public corporation and legal subdivision of the State of Utah, vested with the powers and duties of a government entity as specified in Utah Code Title 53G, Chapter 4.

Defendant-Appellee Salt Lake City School District (the "District") states that pursuant to Utah Code § 67-1a-15 and Utah Code § 53G-3-202, the District is an independent limited purpose entity, under the governance of the Board.

For purposes of this appeal, Defendants-Appellees are referred to collectively as SLCSD or the District.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................... i

TABLE OF AUTHORITIES ................................................ iv

GLOSSARY OF TERMS ................................................. vi

STATEMENT OF PRIOR OR RELATED CASES ........................... viii

STATEMENT OF THE ISSUES................................................1

STATEMENT OF THE CASE ...............................................1

    A.    Parties ....................................................................3

        i.    SLCSD ...................................................3

        ii.    E.J. and Kristin Jacobs ..................................6

        iii.    H.S. and Amanda Sandy ...............................8

    B.    Litigation before the District Court...................................9

STATEMENT OF STANDARD REVIEW ...............................12

SUMMARY OF THE ARGUMENT ...................................13

    1.    The District Court Correctly Found Plaintiffs' Did Not Exhaust Their Section 504 Claim Because It Was Not Asserted to the Due Process Hearing Officers and It Did Not Fit within the Systemic Exception to Exhaustion....................................................14

    2.    The District Court's Order Dismissing Appellants' IDEA and ADA Claims Should be Affirmed. It Properly Considered the Facts Before It and, Consistent with *Murray* and *Urban*, Determined that the Relief Sought by Plaintiffs Is Not Available......16

    3.    Appellants Did Not Properly Preserve or Raise Their First and Sixth Issues on Appeal; Accordingly, They Are Waived. ..................18

ARGUMENT ....................................................................19

I.    The District Court Correctly Dismissed Appellants' Section 504 Claim. ....19

A.  The Jurisdictional Facts Relied on by the District Court Were Not Clearly Erroneous and Appellants Do Not Argue Any Were. ............19

B.  The District Court Correctly Concluded Appellants' Section 504 Claim Was Not Exhausted and Not Subject to the "Systemic Exception." ........................................................................20

II.  The District Court Followed Well-Settled Precedent in Dismissing Appellants' Claims under the IDEA, Section 504, and the ADA and Should Be Affirmed. ......................................................23

A.  Appellants' Descriptions About The District's Hub System and Its Application By the District Are Not Entitled to be Construed As True Because Their Descriptions Are Contradicted by the Hearing Officer's Decision. .............................................................23

B.  The Law Distinguishes Between Educational Placement and the Location of Services and While Parents Have a Right to Meaningful Participation in the Educational Placement Decision, They Do Not Have the Same Input into Location of Services. ..........27

C.  The District Court Correctly Interpreted and Applied *Murray* and *Urban* and Concluded The Parents Sought Relief In the Amended Complaint that Was Not Available under the IDEA, Section 504, or the ADA. .........................................................................31

III.  Appellants First and Sixth Issues Were Not Adequately Preserved or Developed ...............................................................................42

CONCLUSION ..........................................................................................50

CERTIFICATE OF COMPLIANCE .........................................................51

CERTIFICATE OF DIGITAL SUBMISSION .........................................52

CERTIFICATE OF SERVICE ..................................................................53

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)......................................12

*Association for Community Living v. Romer*,
   992 F.2d 1040 (10th Cir. 1993) ................................................. 11, 15, 21

*AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*,
   372 F.3d 674 (4th Cir. 2004) ...............................................29

*Barnett v. Fairfax County Sch. Bd.*,
   927 F.2d 146 (4th Cir. 1991) ...............................................37

*Bd. of Cnty. Commisioners of Sweetwater Cnty. v. Geringer*,
   297 F.3d 1108 (10th Cir. 2002) ...............................................36

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist, Westchester Cnty. v. Rowley*,
   458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).......................................35

*Berna v. Chater*,
   101 F.3d 631 (10th Cir. 1996) ...............................................42

*Buchwald v. Univ. of N.M. Sch. of,*
   *Med.*, 159 F.3d 487 (10th Cir.1998) ...............................................36

*Butler v. Kempthorne*,
   532 F.3d 1108 (10th Cir. 2008) ................................................. 13, 14, 19

*Combier-Kapel v. Biegelson*,
   242 Fed. App'x 714 (2d Cir. 2007) ...............................................24

*Davis ex rel. Davis v. United States*,
   343 F.3d 1282 (10th Cir.2003) ................................................. 13, 19

*Erickson v. Albuquerque Pub. Sch.*,
   199 F.3d 1116 (10th Cir. 1999) ...............................................29

*Fields v. City of Tulsa*,
   753 F.3d 1000 (10th Cir. 2014) ...............................................36

*Fry v. Napoleon Community Schools*,
   580 U.S. 154 (2017)................................................. 15, 21, 22

*Gee v. Pacheco*,
   627 F.3d 1178 (10th Cir. 2010) ...............................................24

*GeoMetWatch Corp. v. Behunin*,
   38 F.4th 1183 (10th Cir. 2022) ...............................................42

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  667 F.3d 1331 (10th Cir. 2012) ........................................................12

*In re Rumsey Land Co., LLC*,
  944 F.3d 1259 (10th Cir. 2019) ........................................................49

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ........................................................12

*Luna Perez v. Sturgis Public Schools*,
  598 U.S. 142 (2023)........................................................................21

*Lyons v. Jefferson Bank & Trust*,
  994 F.2d 716 (10th Cir. 1993) ..........................................................42

*M.W. by and through his parents, Wang v. Clarke County Sch. Dist.*,
  No. 3:06-cv-49(CDL), 2008 WL 4449591 (M.D. Ga. Sept. 29, 2008)...............24

*Merida Delgado v. Gonzales*,
  428 F.3d 916 (10th Cir. 2005) ..........................................................13

*Murray by and through Murray v. Montrose County Sch. Dist. RE-1J*,
  51 F.3d 921 (10th Cir. 1995) ................................. 2, 9, 32, 33, 34, 35, 41

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,
  163 F.3d 449 (7th Cir. 1998) ............................................................16

*New Mexicans for Bill Richardson v. Gonzales*,
  64 F.3d 1495 (10th Cir. 1995) ..........................................................19

*New Mexico Association for Retarded Citizens v. New Mexico*,
  678 F.2d 847 (10th Cir. 1982) ..................................................... 37, 38

*Renne v. Geary*,
  501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).......................19

*Richison v. Ernest Grp., Inc.*,
  634 F.3d 1123 (10th Cir.2011) .........................................................36

*Ridge at Red Hawk, LLC v. Schneider*,
  493 F.3d 1174 (10th Cir. 2007) ........................................................13

*Schultdt v. Mankato Indep. Sch. Dist. No. 77*,
  937 F.2d 1357 (8th Cir. 1991) ..........................................................37

*Sherri A.D. v. Kirby*,
  975 F.2d 193 (5th Cir. 1992) ............................................................29

*Southeastern Comm. College v. Davis*,
  442 U.S. 397 (1979)........................................................................37

*T.Y. v. New York City Dep't of Educ.*,
  584 F.3d 412 (2d Cir. 2009) .............................................................29

*Tele-Commc'ns, Inc. v. Comm'r*,
   104 F.3d 1229 (10th Cir. 1997) ........................................................42

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ............................................................43

*United States v. Morrison*,
   771 F.3d 687 (10th Cir. 2014) ..........................................................42

*Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*,
   89 F.3d 720 (10th Cir. 1996) ....................................................2, 34-43

*White ex rel. White v. Ascension Par. Sch. Bd.*,
   343 F.3d 373 (5th Cir. 2003) ...................................................... 29, 30

## Statutes

Utah Code § 53G-3-202 ........................................................................ i
Utah Code § 53G-4-401 ........................................................................ i
Utah Code § 67-1a-15 ........................................................................... i
Utah Code Title 53G, Chapter 4 .......................................................... i
20 U.S.C. § 1412(5)(A) .......................................................................33
20 U.S.C. § 1412(5)(B) .......................................................................33
20 U.S.C. § 1414(d) .............................................................................28
20 U.S.C. § 1414(d)(1)(B) ...................................................................28
20 U.S.C. §1414(a)(1)(D)(i)(II) ..................................................... 9, 45
20 U.S.C. § 1414(a)(1)(D)(ii) ........................................................... 45
20 U.S.C. § 1414(a)(1)(D)(ii)(II)-(III) ...............................................9
20 U.S.C. §1415 ..................................................................................39
20 U.S.C. §1415(l) ...................................................................... 20, 22

## Rules

10th Cir. R. 25.5 .................................................................................52
Federal Rule of Appellate Procedure ("FRAP") 26.1 .......................... i
FRAP 32(a)(5) .....................................................................................51
FRAP 32(a)(6) .....................................................................................51
FRAP 32(a)(7)(B)(i) ............................................................................51
FRAP 32(f) ..........................................................................................51

## Regulations

34 C.F.R. § 300.116(b)(3)................................................................33

34 C.F.R. § 300.116(c).............................................................. 33, 34

34 C.F.R. § 300.39(a)(1).............................................................28

34 C.F.R. §§ 104.33, 104.35, 104.36...................................... 36, 37

34 C.F.R. Sections 300.552(a)(3) ...............................................33

Final Rule, 71 Fed. Reg. (Aug. 14, 2006)..................................30

# GLOSSARY OF TERMS

"**ADA**" means Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*.

"**DLC**" means the Plaintiff-Appellant Disability Law Center.

"**Families**" means Plaintiffs-Appellants Kristin Jacobs, E.J., Amanda Sandy, and H.S.

"**FAPE**" means a free appropriate public education as that term is defined in 20 U.S.C. § 1401(9).

"**IDEA**" means the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.

"**IEP**" means an Individualized Education Program, as that term is defined in 20 U.S.C. § 1401(14).

"**LEA**" means a local educational agency, at that term is defined in 20 U.S.C. § 1401(19).

"**LRE**" means the least restrictive environment as that term is defined in 20 U.S.C. § 1412(a)(5)(A).

"**Order**" means the District Court's Memorandum Decision and Order Granting Motion to Dismiss, dated March 31, 2023, which is the only order from which Plaintiffs-Appellants appeal in this appeal.

"**Section 504**" means Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## <u>STATEMENT OF PRIOR OR RELATED CASES</u>

Pursuant to Tenth Circuit Local Rule 28.2(C)(3), SLCSD states that there are no prior or related appeals.

## STATEMENT OF THE ISSUES

1.      Under Section 504, is a school district's administrative decision to utilize a "hub" system—which governs only the single component of which school will house varying special class placements under the IDEA—exempt from exhaustion under the "systemic violation" exception?

2.      For special class placements under the IDEA, where the student population is not sufficiently large to necessitate a classroom in every school in a district, does a school district's administrative decision to adopt a "hub" system— which governs only which schools will house varying special class placements— violate the IDEA or ADA because it results in some students attending school at a location other than their neighborhood school?

3.      Did Appellants adequately preserve and present their first and sixth issues on appeal where they did not raise the facts or the law in their Amended Complaint, in argument before the District Court, or otherwise develop the argument(s) in their principal brief?

## STATEMENT OF THE CASE

This lawsuit involves the extent to which a parent has a right to dictate the specific school within a school district where the district must provide special education and related services to their child. For more than twenty-five years, the question has been settled and Appellants offer no reason—much less a compelling

reason—to abandon Tenth Circuit precedent or disrupt the reasonable settled expectations of the impacted parties. Accordingly, the Court should affirm the District Court's Order.

The issue before the Court is not new. In 1995, this Court squarely considered this question and held that the IDEA does not contain a presumption that students receiving special education and related services will be educated in their neighborhood school. *Murray by and through Murray v. Montrose County Sch. Dist. RE-1J*, 51 F.3d 921, 928-930 (10th Cir. 1995). Rather, the Tenth Circuit recognized that "[t]here is at most a preference for education in the neighborhood school." *Id*. at 929. The very next year, in *Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*, this Court reiterated and expanded on *Murray*, holding: "[T]he IDEA does not give [students] a right to a placement at a neighborhood school." 89 F.3d 720, 727 (10th Cir. 1996) (citing *Murray*, 51 F.3d at 928-930 (alterations added)). The *Urban* court further held, in response to a disability discrimination claim under Section 504, that "if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under section 504." *Id*. at 728 (emphasis added). Finally, regarding a companion claim under Title II of the ADA, the *Urban* court "conclude[d] that the ADA does not entitle [a student] to attend his neighborhood school." *Id*. (alteration added). *Murray* and *Urban*

foreclose Appellants' claims and the District Court correctly granted SLCSD's motion to dismiss.

Understandably, most if not all parents of children with disabilities would likely prefer their child attend their neighborhood school. But Congress in passing IDEA or reauthorizing it has never given parents the right to control the *location* of where their child's special education and related services are provided. The determination of the site (or school) where the services will be delivered is an administrative determination. And for a district to function effectively, efficiently, fairly, and as a responsible steward of the public purse, it must be.

## A.     Parties

### i.     SLCSD

The District's boundaries mirror the municipal boundary for Salt Lake City and encompass an area of approximately 110 square miles. Inside its boundaries, the District operates 49 schools, including 33 elementary schools, seven junior high schools, six high schools, and three charter schools. For elementary schools, that equates to approximately one school for every three and one-third square miles. Some children live only a block or two away and walk to school, while others live more than a mile away and are bussed.

The District educates approximately 20,000 students on a daily basis. Those students' capabilities run the gamut from nonverbal students who are learning

functional life skills such as toilet training or self-feeding, to students who are

doing the equivalent of college level work. Similarly, the social and emotional

development of the students, their maturity, their work ethic and drive, their

interest in learning, also covers a significant spectrum. Some students have

extremely disruptive behaviors, which can be unpredictable and violent. Some

students have unique physical and mental health conditions. There is not a

stereotypical student in the District (or any district for that matter), and the District

is tasked with educating each and every one of them, effectively, efficiently, fairly,

and with dignity and respect. The District does this.

The District is managed by the Board, which is made up of seven board

members elected from their respective precincts. (JA.1:55 ¶72.) The Board sets

policies, prepares budgets, and generally oversees the operation of the District.

(JA.1:55 ¶72.)[1]

In 2019, SLCSD announced it was formalizing its service delivery pattern

for certain special education placements involving children with disabilities that

required more intensive services and supports by consolidating similar students

_____

[1] Appellants and the District Court sometimes refer to SLCSD's use of the hub
system as the hub "policy." It is important to note that only the Board can adopt
policy for the District. SLCSD disputes that the Board ever adopted a policy as it
relates to the use of the hub system to locate the District's various special
classrooms. Given the procedural posture of this case and for purposes of this
appeal, SLCSD's use of "hub policy" terminology used by Appellants and the
District Court in its decision below should not be construed as an admission that
such a policy was adopted.

with similar levels of needs at "hub" schools. (JA.1:69-70 ¶¶151-152.) The students who were subject to this hub system were those whose needs were "too significant to be accommodated in a typical general education classroom with supplementary aids and services." (JA.1:70 ¶153.) In essence, the District divided itself into sections, with each section having a school roughly central within its boundaries.[2] The new hub system was designed to "maximize efficiency in service delivery and transportation" and improve upon certain shortcomings of the prior service delivery model. (JA.1:70-71 ¶¶152, 157.) One improvement with the hub system is "more inclusion for students with disabilities." (JA.1:72 ¶166.) In practice, E.J.'s "Academic Support" class was "a fully immersive combined collaborative classroom where she spent all of her time with her nondisabled peers[.]" (JA.1:62 ¶102.)

---

[2] For children whose IEP Teams placed them in a "mild/moderate" placement—also called "Academic Support"—the three classrooms in the District constituting this placement were located at Backman, Emerson, and Franklin Elementary Schools. For children whose IEP Teams placed them in a "severe" placement—also called "Essential Elements"—the four classrooms constituting this placement in the District were located at Highland Park, Nibley Park, Meadowlark and Parkview Elementary Schools, and for students placed in a "severe" placement who also were "medically fragile," their classroom placement was at Dilworth Elementary. (JA.1:60 ¶91, 70 ¶¶155-156.)

ii.  E.J. and Kristin Jacobs

E.J. is a student enrolled in the District, who has been determined eligible to receive special education and related services in accordance with the IDEA due to a mild/moderate cognitive disability. (JA.1:44 ¶2, 50 ¶50, 59 ¶89.)

For the 2021-2022 school year, E.J. attended Emerson Elementary School. (JA.1:50 ¶50, 59 ¶86.) At Emerson, E.J. was educated in a fully immersive combined collaborative classroom where she spent *all of her time* with her nondisabled peers, receiving instruction from a general education teacher in all of her academic subjects." (JA.1:62 ¶102 (emphasis added).)

Although E.J. attended Emerson, her neighborhood school is Dilworth Elementary School. (JA.1:60 ¶94.) E.J.'s parents want her to attend Dilworth. (JA.1:60 ¶94.) Articulated reasons for preferring Dilworth include allowing E.J. to walk to and from school with her siblings and her neighborhood friends. (JA.1:60 ¶94, 62 ¶105.)

On or about March 4, 2021, E.J.'s parents filed a Due Process Hearing Request with the USBE. (JA.1:48; *see also* JA.1:10, JA.2:250-JA262 (the "E.J. Request").) The E.J. Request alleged violations of the IDEA and the ADA related to the location where E.J. received her special education and related services. (JA.1:48; *see also* JA.1:11, 13-31 (the "E.J. Order").) The E.J. Request did not include a claim under Section 504. (JA.2:250-262; *see also* JA.1:14-15.) A four-

day due process hearing occurred September 13-16 in accordance with the IDEA and its procedural regulations. (JA.1:48 ¶34; *see also* JA.1:17.) Pertinent to this appeal, the hearing officer concluded as follows:

> (1) the change from Indian Hills Elementary to Emerson "was a change in location only and that all of previously provided supplementary aids and services provided by her IEP and her previous IEP followed her to her new location." (JA.1:19.);

> (2) "There is little evidence to support the claim that E.J.'s IEP can be implemented **satisfactorily** at Dilworth, her neighborhood school and thus, I **do not** find that the student has been **wrongfully** denied the opportunity to receive her education in the regular classroom environment to the maximum extent appropriate, and/or by segregating her unnecessarily from her non-disabled peers. On the contrary, the school district provided substantial evidence that it is has given 'thoughtful consideration' to E.J.'s placement decisions, has developed and implemented an IEP tailored to her individual needs and has determined that the IEP cannot be implemented satisfactorily in Dilworth, her neighborhood school." (JA.1:25 (emphasis in original).);

> (3) "Based on the testimony of the district witnesses, who were and are members of E.J.'s IEP team, I do not find that the district failed to 'give consideration to the full range of supplementary aids and services that could be provided to her in the regular education environment before removing her to a self-contained classroom and again before moving her to one of the district's designated hub schools for students with disabilities.'" (JA.1:26.);

> (4) "[B]ased on the evidence adduced, the exhibits and testimony of the various witnesses, I find neither that the district failed to 'meaningfully consider the full continuum of placement options available for EJ in order to allow her to attend the school she would have attended were she not disabled, including the school closest to her home', nor that the

district mischaracterized 'the severity of her disability.' The record is replete with evidence supporting the severity of the student's disability, and the testimony of her education personnel supports the contention that E.J. has need for 'scaffolding' and interventions to access the Tier 1 Instruction she ought to be receiving, based on her abilities and the complexity of the materials being taught to her age- appropriate non-disabled peers." (JA.1:27.); and

(5) "Based on the evidence submitted during trial, I find that the district did in fact give consideration to the potential harmful effect of removing the student from a regular education classroom environment from the testimony of her IEP team members. I further find that those considerations gave way to the overriding considerations of E.J.'s need for academic support." (JA.1:28.)

iii.   <u>H.S. and Amanda Sandy</u>

H.S. is a student enrolled in the District, who has been determined eligible to receive special education and related services in accordance with the IDEA due to a significant cognitive disability. (JA.1:44 ¶2, 50-51 ¶¶53, 55-56.)

H.S.'s IEP Team determined his appropriate placement was a "self-contained" class at Highland Park Elementary. (JA.1:51 ¶56.) H.S.'s parents did not consent to H.S. receiving special education and related services. (JA.1:49 ¶44; JA.1:11, 33-42 ("H.S. Order").) For the 2021-2022 school year, H.S. attended Bonneville Elementary School, his "neighborhood school," and was educated in a general education classroom. (JA.1:50-51 ¶¶53, 56, 58-59.)

On or about September 17, 2021, H.S.'s parents filed a Due Process Hearing Request pursuant to the IDEA. (JA.1:49 ¶41; *see also* JA.1:11, JA.2:276-289 (the

"H.S. Request").) The hearing officer dismissed the Due Process Hearing Request on the grounds that because H.S.'s parents did not consent to H.S. receiving special .education and related services under the IDEA—a prerequisite to being entitled to the procedural safeguards of IDEA pursuant to 20 U.S.C. §§ 1414(a)(1)(D)(i)(II), 1414(a)(1)(D)(ii)(II)-(III)—they were not entitled to bring an administrative proceeding invoking its protections. (JA.1:49 ¶44; *see generally*, JA.1:33-42.)

### B.     Litigation before the District Court

After adverse determinations by their respective hearing officers, the Appellants filed this lawsuit. The Complaint included causes of action under the IDEA, ADA, and Section 504 and specifically demanded an order requiring the District to provide their special education services in their neighborhood school. (JA.1:3.)  SLCSD filed a motion to dismiss. (JA.1:4.)

In response to SLCSD's motion to dismiss, Plaintiff's filed an artfully-pled Amended Complaint that, while strikingly similar to the original complaint, attempted to rephrase the same relief in terms that were not so clearly violative of *Urban* and *Murray*. (JA.1:43-86.) Appellants' causes of action were the same: ADA, Section 504, and IDEA. (JA.1:80-85 ¶¶213-234(b)(iv).) The essence of the Title II claim is that under the hub policy Appellants could not participate in and benefit from educational services equal to and as effective as those afforded to other students. (JA.1:80-81 ¶217.) Appellants Section 504 claim asserted that the

hub school segregated Appellants by denying them access to their neighborhood

schools, failed to operate services in the most integrated setting appropriate to

Appellants' needs, and caused Appellants and other students to be treated

unequally when compared to their non-disabled peers. (JA.1:83 ¶¶227-229.)

Finally, Appellants IDEA claims are based on allegations that Defendants: (1)

failed to provide Plaintiffs with a FAPE in the LRE; and (2) failed to make

decisions about Plaintiffs' placement based on individual needs and other factors.

(JA.1:83-85 ¶234.) In the Amended Complaint, Appellants requested the District

Court "[o]rder SLCSD to make individualized placement decisions for each of the

Plainitffs based on their IEPs and meaningfully consider the full continuum of

placement options and supplementary aids and services necessary to place them at

their neighborhood schools[.]" (JA.1:86 §VIII.E.) As with the original complaint,

the Amended Complaint did not allege the hearing officers' findings of fact were

unsupported by substantial evidence or that their conclusions of law were

incorrect. (JA.1:43-86.) Although the Amended Complaint alleged that both E.J.

and H.S. were appealing the hearing officers' administrative decisions, (JA.1:49 ¶¶

40, 47.), again, the Prayer for Relief did not seek to reverse or overturn any hearing

officer's decision, (JA.1:85-86.)

Appellees again moved to dismiss because, although rephrased, the

Amended Complaint sought the same relief for the same conduct: an order

requiring the District to surrender its ability to control the determination of the location where special education and related services would be delivered. (JA.1:120-164.)

On March 31, 2023, the District Court ruled on Appellees' motion to dismiss. (*See generally*, JA.1:229-245.) The District Court denied the District's Rule 12(b)(1) motion to dismiss for lack of jurisdiction that challenged Appellants' standing. (JA.1:231-238.) The District Court granted the Rule 12(b)(1) motion to dismiss Appellants' Section 504 claims because it concluded Appellants did not exhaust their administrative remedies and, following *Association for Community Living v. Romer*, 992 F.2d 1040 (10 Cir. 1993), those claims were not subject to the "systemic failure" exception to exhaustion. (JA.1:238-241.)

The District Court then granted Appellees' motion to dismiss the IDEA and ADA claims for failure to state a claim. (JA.1:241-245.) The Court identified the Appellants' lawsuit as one seeking "the court to order the SLCSD to reconsider their individualized education programs and determine whether they can receive special education services in their local schools." (JA.1:243.) Following *Murray* and *Urban*—as the District Court must—it concluded "the holdings of *Murray* and *Urban* were not equivocal. These precedents do not leave the door open for this court to find that the IDEA or the ADA requires the SLCSD to make individual

determinations as to where special education services should be provided."
(JA.1:244.) Appellants, thereafter, commenced this appeal. (JA.1:247-248.)

## STATEMENT OF STANDARD REVIEW

The District Court dismissed Appellants' IDEA and ADA claims under Rule 12(b)(6). This Court reviews *de novo* a district court dismissal under Rule 12(b)(6), "accepting all well-pleaded factual allegations in the complaint as true and construing them in the light move favorable to the plaintiff." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 (10th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "[M]ere labels and conclusions … will not suffice" and the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012). "[T]he court will not accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Iqbal*, 556 U.S. at 678. "The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these

claims." *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

In contrast, the Section 504 claim was dismissed under Rule 12(b)(1).[3] This Court's standard of review on a motion to dismiss for lack of subject matter jurisdiction is two-fold; findings of jurisdictional facts are reviewed for clear error while the legal determination to dismiss for lack of subject matter jurisdiction is reviewed *de novo*. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (citing *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294–95 (10th Cir. 2003)). Importantly, because federal courts are courts of limited jurisdiction, "there is a presumption against [federal] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (quotation omitted).

## SUMMARY OF THE ARGUMENT

This lawsuit seeks to upend twenty-five years of well-settled Tenth Circuit precedent that has recognized that the IDEA, Section 504, and the ADA do not give a parent a right to compel a district to provide their child's education at their neighborhood school. Despite Appellants' attempt to artfully plead around this defect that is fatal to each of their claims, the District Court properly considered

---

[3] Appellants erroneously contend that the Section 504 claim was dismissed under Rule 12(b)(6). *See* Appellants Br. at 27.

the facts and applied the law related to each claim, and dismissed all of their claims.  Accordingly, the Order should be affirmed in full.

1.   **The District Court Correctly Found Plaintiffs' Did Not Exhaust Their Section 504 Claim Because It Was Not Asserted to the Due Process Hearing Officers and It Did Not Fit within the Systemic Exception to Exhaustion.**

The District Court granted SLCSD's Motion to Dismiss the Section 504 claim pursuant to Rule 12(b)(1) because Appellants did not exhaust their administrative remedies and their claim did not fit within the asserted exception. (JA.1:238-241.) This Court reviews the jurisdictional facts associated with a 12(b)(1) dismissal for clear error and reviews the decision to dismiss *de novo*. *Butler*, 532 F.3d at 1110. Here, Appellants have not challenged any of the facts related to jurisdiction relied upon by the District Court. Accordingly, this Court's review is limited to whether the District Court's decision on exhaustion was correct.

The District Court's initial determination that Appellants did not exhaust their administrative remedies is correct. Although the IDEA preserves a party's ability to pursue claims under Section 504 and the ADA, the IDEA's exhaustion requirement states that when a party is "seeking relief that is also available under" the IDEA, they must exhaust pursuant to the IDEA. 20 U.S.C. § 1415(l). Here, Plaintiffs filed their due process hearing requests and limited them to claims under the IDEA and the ADA. (*See generally*, JA.2:249-274 (E.J.) and JA.2:276-302

14

(H.S.).) There is no mention of a Section 504 claim in any of the individual due process hearing requests. Moreover, since the prayer for relief in the Amended Complaint addresses issues that comprise FAPE—placement, least restrictive environment, appropriate accommodations—Appellants' Section 504 claim overlaps with IDEA and required exhaustion. Accordingly, the District Court correctly dismissed the claim.

Appellants seek to revive this claim under the "systemic exception" to exhaustion. Following this Court's precedent in *Romer*, 992 F.2d 1040, the District Court properly concluded that the exception did not apply for two reasons. First, the Amended Complaint "targets … the effect of a single component of [the SLCSD's] education program" on IEPs. (JA.1:240.) Second, the analysis of Appellants' claims "requires inquiry into the factual details of each particular child's case," which is the antithesis of the systematic exception. (JA.1:241.)

Appellants' efforts to artfully plead their case around the IDEA's exhaustion requirement also fails. Appellants attempt to squeeze their claims into the analytical framework recognized by the Supreme Court in *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017). Those efforts fail because the relief sought in the Amended Complaint clearly implicates FAPE, which under *Fry* is the touchstone for IDEA exhaustion.

**2.     The District Court's Order Dismissing Appellants' IDEA and ADA Claims Should be Affirmed. It Properly Considered the Facts Before It and, Consistent with *Murray* and *Urban*, Determined that the Relief Sought by Plaintiffs Is Not Available.**

The court below granted Appellees' Motion to Dismiss the IDEA and ADA claims for failure to state a claim because the Court found that the relief sought by Appellants—requiring a school district to educate their child at their neighborhood school—was not available under *Murray* or *Urban*. Based on the facts properly before the District Court—including those in the administrative record—the District Court's order was correct and should be affirmed.

Appellants' arguments to reverse the District Court suffer two fatal flaws. First, the facts properly considered by the District Court were not limited to just Appellants' spin contained in the Amended Complaint, but also included part of the administrative record including the Appellants' requests for due process hearings and the independent hearing officer's decisions in response to those requests. On a 12(b)(6) motion, when there is a discrepancy between a party's self-serving pleading and an exhibit, the exhibit "trumps" the allegations in the pleadings. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Moreover, the District Court correctly disregarded Appellants' legal conclusions, speculation, and other flawed allegations in the Amended Complaint. Accordingly, Appellants' reliance solely on their allegations in the Amended Complaint, and their failure to come to acknowledge their

characterization of the hub policy is inconsistent with how it is actually applied, dooms their claims.

The second fatal flaw is that *Murray* and *Urban* foreclose the Appellants from obtaining the relief they seek. Appellants want to force the District to educate their child at their neighborhood school. (JA.1:86 § VIII.E.) The Amended Complaint attempts to artfully plead out from under the effect of *Murray* and *Urban* by mischaracterizing how the hub policy works, obfuscating the legal difference between "educational placement" under IDEA, Section 504, and the ADA with the location of services, trying to distinguish the applicable case law, and otherwise contorting their argument into something it is not.

The District Court properly looked to the crux of the Amended Complaint. It properly analyzed the facts as alleged and as shown in the exhibits—the administrative record—and correctly identified that the ultimate relief sought by the Appellants was simply not available under *Murray* or *Urban*. Congress, the U.S. Department of Education, and the Courts have consistently determined that location of where services are provided is a district administrative decision and when the child is determined to need supports and services that cannot be adequately satisfied in a regular education classroom—as is the case for E.J. and H.S.—then the school does not discriminate by only offering the necessary

educational programs—the "placement" in IDEA parlance—at select buildings within the district.

### 3. Appellants Did Not Properly Preserve or Raise Their First and Sixth Issues on Appeal; Accordingly, They Are Waived.

Appellants identify six issues presented for review; however, two of them were not adequately preserved or developed. Accordingly, under Tenth Circuit precedent, those arguments are waived.

Appellants first issue alleges the District Court did not either accept the allegations in the Amended Complaint as true or draw all reasonable inferences in their favor.[4] Appellants' brief does not contain a section that contains this argument. Although the brief does make an occasional reference to facts Appellants perceive the District Court did not consider, they don't identify any inferences the District Court should have drawn but did not. Moreover, the brief does not explain how the Court's decision would have changed in light of those facts or inferences. Appellants' efforts related to this issue are insufficient.

Appellants' sixth issue on appeal is an error of their own making. Appellants contend the District Court erred by not considering the administrative record; however, Appellants never proffered the record to the lower court. As part of its Motions to Dismiss, Appellees provided E.J.'s and H.S.'s due process hearing

---

[4] As noted above, and explained below, the District Court had exhibits before it that were part of the administrative record and those exhibits "trump" allegations when there is a conflict.

request and the decisions of their respective hearing officers. Those documents were properly before the District Court and could be considered on the motion to dismiss. Appellants had the opportunity to supplement the administrative record but chose not to. They cannot recast their litigation decision as reversible error.

Lastly, this Court could consider those arguments if they are shown to be plain error. Here, Appellants have neither made such a showing nor attempted to make such a showing. Accordingly, the Court should find these issues waived.

## ARGUMENT

### I.     The District Court Correctly Dismissed Appellants' Section 504 Claim.

#### A.     The Jurisdictional Facts Relied on by the District Court Were Not Clearly Erroneous and Appellants Do Not Argue Any Were.

As noted above, Appellants' Section 504 claim was dismissed based on the failure to exhaust administrative remedies pursuant to Rule 12(b)(1), not Rule 12(b)(6) as Appellants assert. This Court's standard of review on a 12(b)(1) dismissal is two-fold; findings of jurisdictional facts are reviewed for clear error while the legal determination to dismiss for lack of subject matter jurisdiction is reviewed *de novo*. *Butler*, 532 F.3d at 1110 (citing *Davis*, 343 F.3d at 1294–95). "It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citing *Renne v. Geary*, 501 U.S. 312, 317, 111 S.Ct. 2331, 2337, 115 L.Ed.2d 288 (1991)).

Appellants have failed to identify any facts relied on by the District Court that they contend were clearly erroneous. That is understandable because the lower court explicitly relied on facts from the allegations of the Amended Complaint. (JA.1:229 n. 1.) As a result, the District Court's statement of facts should be deemed accepted for purposes of this appeal.

**B.    The District Court Correctly Concluded Appellants' Section 504 Claim Was Not Exhausted and Not Subject to the "Systemic Exception."**

The District Court correctly concluded that Appellants' claims pursuant to Section 504 of the Rehabilitation Act are barred because they failed to exhaust their administrative remedies and the systemic exception to the exhaustion requirement does not apply. IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures,  and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter</u>.

20 U.S.C. § 1415(l) (emphasis added). Neither E.J. nor H.S. asserted a Section 504 claim in their due process hearing request submitted to the Utah State Board of Education. (*See generally*, JA.2:249-262 (E.J.); JA.2:276-289 (H.S.).) Instead, they limited their claims to those arising under IDEA and the ADA, expressly seeking

to preserve their ADA claims in the event the hearing officer lacked jurisdiction to decide them. (JA.1:151-152.) Before the District Court, SLCSD conceded that Appellants had exhausted their IDEA administrative remedies regarding both of those causes of action. (JA.1:152.) However, because no mention of any Section 504 claim was made in either of the underlying administrative proceedings, and because the gravamen of the Section 504 claim is the denial of FAPE, SLCSD moved to dismiss the Section 504 claim based on the failure to exhaust. Appellants' 504 claims were correctly dismissed because they did not assert those claims in their IDEA due process hearing requests.

On appeal, Appellants wrongly continue to assert that exhaustion is not required because their 504 claim involves systematic discrimination and their requested relief would not have been available under the IDEA's administrative process. In support of their arguments, they primarily rely on three cases: *Fry v. Napoleon Community Schools*, 580 U.S. 154, *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 150 (2023), and *Association for Community Living v. Romer*, 992 F.2d 1040. These cases, however, do not compel the conclusion that exhaustion is excused. Rather, the correct reading demonstrates that Appellants' Section 504 claim is seeking relief that implicates FAPE and could have been remedied by the IDEA. In other words, the type of relief Plaintiffs seek pursuant to their Section 504 claims could be remedied to some degree, if not completely,

through the pursuit of individual IDEA claims. This overlap triggers the obligation of Appellants to exhaust their Section 504 claim, which they did not do.

Appellants gloss over the IDEA-like nature of the relief sought in their 504 claim in an effort to fit their allegations into *Fry's* analytical framework. Under the Supreme Court's 2017 decision in *Fry*, if the substance of a lawsuit asserts a denial of FAPE, the exhaustion requirement of § 1415(l) cannot be escaped through artful pleading under a statute other than the IDEA. 580 U.S. at 754-55. While it may be true that IDEA's individual administrative process would not allow for the hub system to be challenged for all students, this is irrelevant. Where the relief being sought implicates FAPE, each individual aggrieved student who is unhappy with their placement is required to exhaust their administrative remedies. Contrary to Appellants' assertions, it is simply not the case that E.J. and H.S. could be swapped with any of hundreds of other students in SLCSD, without any meaningful change in the results of an IDEA administrative hearing.

The District Court correctly found that before filing a lawsuit that seeks the same relief available under the IDEA, a litigant must exhaust his or her administrative remedies and that Appellants had failed to do so. Therefore, it correctly dismissed Appellants' Section 504 claim.

**II.    The District Court Followed Well-Settled Precedent in Dismissing Appellants' Claims under the IDEA, Section 504, and the ADA and Should Be Affirmed.**

The District Court correctly interpreted the claims asserted by Appellants, followed this Court's mandatory authority, and concluded that Appellants claims "failed as a matter of law." (JA.1:245.) The court recognized that the Amended Complaint purports to enforce rights that this Circuit Court has said do not exist under any of the laws relied upon by Appellants. Accordingly, this Court should affirm the District Court's Order.

**A.    Appellants' Descriptions About The District's Hub System and Its Application By the District Are Not Entitled to be Construed As True Because Their Descriptions Are Contradicted by the Hearing Officer's Decision.**

Throughout the Amended Complaint, Appellants use inflammatory words to paint the District's hub system in a negative light. While a Rule 12(b)(6) motion typically construes the alleged facts in the light most favorable to the non-moving party, there are exceptions to that general rule of construction.

"It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (citing cases). This rule is in play here.

SLCSD presented to the District Court E.J.'s and H.S.'s requests for due process hearings and the resulting decisions of each hearing officer. (JA.1:13-31

and JA2.:249-275 (E.J.); JA.1:33-41 and JA.2:276-302 (H.S.).) These materials are properly considered on a Rule 12(b)(6) motion because they are referred to and integral to the complaint, and are matters subject to judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Courts reviewing appeals from IDEA due process rulings regularly consider the administrative record on a motion to dismiss. *Combier-Kapel v. Biegelson*, 242 Fed. App'x 714, 715 (2d Cir. 2007) (summary order) ("The district court did not err in considering the IHO's decision, along with certain other documents in the administrative record, since such documents were subject to judicial notice and were integral to the complaint."); *M.W. by and through his parents, Wang v. Clarke County Sch. Dist.*, No. 3:06-cv-49(CDL), 2008 WL 4449591 *1 (M.D. Ga. Sept. 29, 2008) (district court may consider the administrative record on a 12(b)(6) motion in an IDEA appeal) (unpublished).

The hearing officer's decision in E.J.'s due process substantively addressed the fundamental aspects of Appellants' claims and concluded, across the board, that SLCSD had complied with its IDEA obligations related to E.J.'s placement and any corollary impact her placement had on the location of her schooling. (JA.1:13-31.) The hearing officer, after a four-day trial and nearly 2,950 pages of exhibits, (JA.1:17), concluded in the District's favor on all of E.J.'s claims, rejecting arguments that the District: (1) "denied her the opportunity to receive her

education in the regular classroom … and by segregating her unnecessarily[;]" (2) made her placement decision based on "the availability of group programs and other impermissible factors such as administrative convenience and severity of disability" rather than her individual needs; (3) did not consider "the full range of supplementary aids services could be provided to her in the regular education environment before removing her to a self-contained classroom and again before moving her to one of the district's designated hub schools[;] and (4) did not consider the full continuum of placement options "in order to allow her to attend" her neighborhood school. (JA.1:29-30.)

The factual record developed before E.J.'s hearing officer shows the District and its hub policy work exactly the opposite of how Appellants have alleged. For instance, Appellants alleged that the hub policy dictates a placement and there is no individualized analysis. (JA.1:51 ¶¶56-57; JA.1:68-71 ¶¶141-158.) The E.J. Order strongly repudiates Appellants' mischaracterization, finding:

> There is little evidence to support the claim that E.J.'s IEP can be implemented **satisfactorily** at Dilworth, her neighborhood school and thus, I **do not** find that the student has been **wrongfully** denied the opportunity to receive her education in the regular classroom environment to the maximum extent appropriate, and/or by segregating her unnecessarily from her non-disabled peers. On the contrary, the school district provided substantial evidence that it is has given 'thoughtful consideration' to E.J.'s placement decisions, has developed and implemented an IEP tailored to her individual needs and has determined that the IEP cannot be implemented satisfactorily in Dilworth, her neighborhood school."

(JA.1:25 (emphasis in original).) Similarly, Appellants' allegations that the District only looks at disability category to assign placement under the hub policy stand in stark contrast to the hearing officer's finding, *to wit*, "[i]t appears from the evidence that ample consideration was given based upon the data gathered on E.J. and her individualized needs before the recommendations and terms of her IEP were drafted and finalized." (JA.1:25-26.) Finally, E.J.'s hearing officer also found:

> I find neither that the district failed to "meaningfully consider the full continuum of placement options available for EJ in order to allow her to attend the school she would have attended were she not disabled, including the school closest to her home", nor that the district mischaracterized "the severity of her disability." The record is replete with evidence supporting the severity of the student's disability, and the testimony of her education personnel supports the contention that E.J. has need for "scaffolding" and interventions to access the Tier 1 Instruction she ought to be receiving, based on her abilities and the complexity of the materials being taught to her age appropriate non-disabled peers.

(JA.1:26.) These facts show that the District properly determines LRE on an individualized basis and only once the student is placed into one of the special classes subject to the hub policy, are they then assigned a location for their schooling. That process is in conformity with—not in violation of—the IDEA, Section 504, and the ADA.

Moreover, these factual findings completely undercut the basis for Appellants' ADA claim. Appellants assign error to the District Court because, they claim, "[t]he Amended Complaint makes clear that the school district does not, in fact consider the individual needs of E.J., H.S., or any other child before subjecting them to the hub policy, but rather discriminates on the basis of the perceived severity of their disability category." Appellants' Br. at 41. This argument only has legs if the Amended Complaint stands alone. Here, the Court has the hearing officer's decision. That exhibit and the facts contained therein "trump" the Appellants' self-serving allegations in the Amended Complaint.

The District Court was correct not to blindly accept Appellants' incendiary descriptions of the hub policy when confronted with a detailed administrative decision addressing the application of that classroom assignment system. Here, the District Court rejected the Appellants' self-serving spin and focused on actual facts. The trial court did not err.

**B.    The Law Distinguishes Between Educational Placement and the Location of Services and While Parents Have a Right to Meaningful Participation in the Educational Placement Decision, They Do Not Have the Same Input into Location of Services.**

Fundamental to the issue before this Court is the distinction in the IDEA (which is incorporated into Section 504 and the ADA) between the concepts of "placement" and location. Curiously, Appellants contend the District Court

"confuses and conflates" the difference, Appellants' Br. at 32, but it is in fact the Appellants whose arguments blur the distinction.

As an LEA receiving federal and state funding, the District is obligated to comply with a number of federal and state laws, including the IDEA and its federal and state implementing regulations. The IDEA provides that the District must provide a FAPE to each eligible student in the LRE. The vehicle for FAPE is an IEP, which is the result of extensive cooperation and communication between each child's "IEP Team." *See generally*, 20 U.S.C. § 1414(d). Each IEP Team is comprised of parents and school personnel such as an administrator, special education teacher, general education teacher, and related service providers such as speech language pathologists and occupational therapists, among others. 20 U.S.C. § 1414(d)(1)(B).

The LEA must also ensure that a "continuum of alternative placements" is available to meet the varying and individualized needs of students with disabilities. This continuum includes instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions. 34 C.F.R. § 300.39(a)(1).

The term "educational placement" is not defined by IDEA or its implementing regulations. As a result, the meaning has been developed through litigation. Courts have explained "'[e]ducational placement' refers to the general

educational program—such as the classes, individualized attention, and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009); *see also AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004) ("Consideration of the structure and the goals of the IDEA as a whole, in addition to its implementing regulations, reinforces our conclusion that the touchstone of the term "educational placement" is not the location to which the student is assigned but rather the environment in which educational services are provided."); *see also White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003) ("Educational placement", as used in the IDEA, means educational program—not the particular institution where that program is implemented.) The Tenth Circuit is in accord with *T.Y.*, *AW*, and *White* because it has recognized that "[a]n educational placement is changed when a fundamental change in, or elimination of, a basic element of the educational program has occurred." *Erickson v. Albuquerque Pub. Sch.*, 199 F.3d 1116 (10th Cir. 1999) (citing *Sherri A.D. v. Kirby*, 975 F.2d 193, 206 (5th Cir. 1992)).

Importantly, under the IDEA, the physical location of where the special education and related services are provided is not now—nor has it ever been—part of "placement." The U.S. Department of Education has explicitly taken the position that location is separate and distinct from placement, publishing in the

Federal Register: "The Department's longstanding position is that placement refers to the provision of special education and related services rather than a specific place, such as a specific classroom or specific school." Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities; Final Rule, 71 Fed. Reg. at 46687 (Aug. 14, 2006). Similarly, in *White*, the Fifth Circuit rejected the parents' attempts to "be involved in site selection," because it found those decisions to be "administrative." 343 F.3d at 379.

Appellants' argument at its core ignores this distinction. Appellants correctly identify the alternative "placements" along the continuum of placements under the IDEA, Appellants' Br. at 32, but that entire argument is a red herring because this lawsuit is not about placement, it is about location of services. Absent from their brief is any legal support for the proposition that under the IDEA a parent is legally entitled to dictate where the educational placement offered by a school district should be located.

Rather than being swayed by Appellants' efforts to conflate placement and location decisions, the District Court properly looked to the crux of the Amended Complaint, analyzed the Families' rights under the IDEA and the ADA and credited the distinction between placement and location that exists in the statute,

regulation, and case law. The District Court correctly identified the fundamental

issue of the Appellants' Amended Complaint:

> The crux of the plaintiffs' claims under both the IDEA and the
> ADA is that the SLCSD's hub policy violates the protections
> afforded by these statutes because the district's placement
> decisions are not individualized. According to the plaintiffs, the
> IDEA and the ADA require the district to meaningfully
> consider providing special education services to disabled
> students in their neighborhood schools when formulating their
> individualized education programs. The plaintiffs ask the court
> to order the SLCSD to reconsider their individualized education
> programs and determine whether they can receive special
> education services in their local schools.

(JA.1:242-243.) The District Court then gave effect to the distinction between

placement and location and, relying on Tenth Circuit precedent, concluded "[i]f a

school district has established a system to provide special education services in

specific locations, it is not required to consider providing specialized serviced in

neighborhood schools on a case-by-case basis or to modify its programs to

accommodate the location preferences of individual students." (JA.1:244-245.)

The District Court did not confuse or conflate anything. The District Court

committed no error. Its decision should be affirmed.

### C. The District Court Correctly Interpreted and Applied *Murray* and *Urban* and Concluded The Parents Sought Relief In the Amended Complaint that Was Not Available under the IDEA, Section 504, or the ADA.

As noted, this Court was presented with the same questions currently before

it in 1995 and 1996, and it concluded that the IDEA, Section 504, and the ADA do

not give parents the rights to dictate the school where their child will receive their special education and related services. Both *Murray* and *Urban* remain good law. The underlying policy rationales are unchanged. This Court should not deviate from those decisions. Accordingly, the District Court's order should be affirmed.

In 1995, this Court "h[e]ld that there is no presumption of neighborhood schooling, either in the IDEA or its implementing regulations." *Murray*, 51 F.3d at 928-930. In *Murray*, the student ("Tyler") originally lived about five blocks away from the school where he was receiving special education services. *Id*. at 923. After surgery, which resulted in six weeks in a cast, he was regressing on his IEP goals. *Id*. at 924. The district raised the prospect of moving Tyler to a different, more restrictive, placement that was located at a different school ("Northside"), but his parents strongly objected because they wanted him to attend school with his siblings and neighborhood friends. *Id*. After a three-year reevaluation (to confirm Tyler's ongoing eligibility to receive special education) the district moved Tyler to Northside. *Id*. Tyler's parents filed for due process under the IDEA. *Id*. While the parents prevailed before the first level independent hearing officer, the district appealed and prevailed before the second level administrative law judge. *Id*., at 925. The district court affirmed the second level ALJ decision. *Id*.

On appeal, the Tenth Circuit "reject[ed]" the parents' argument that the plain meaning of the IDEA, its legislative history, and its regulations created "a strong

rebuttable presumption that the LRE is in the neighborhood school, with supplementary aids and services." *Id*., at 928. Parents levied a three-pronged legal argument consisting of a statutory construction argument, a regulation argument and a legislative history argument. Each argument failed.

Regarding the statutory argument, the Court noted that 20 U.S.C. § 1412(5)(B)[5] "says nothing, expressly or by implication, about removal of disabled children from neighborhood schools. … while it clearly commands schools to include or mainstream disabled children as much as possible, it says nothing about where, within a school district, that inclusion shall take place." *Id*., at 928-929. In rejecting the regulatory argument, based on 34 C.F.R. §§ 300.552(a)(3)[6] and 300.552(c)[7], this Court explained the proper way to read these regulations as follows:

> A natural and logical reading of these two regulations is that a disabled child should be educated in the school he or she would attend if not disabled (i.e., the neighborhood school), unless the child's IEP requires placement elsewhere. If the IEP requires placement elsewhere, then, in deciding where the appropriate placement is, geographical proximity to home is relevant, and the child should be placed as close to home as possible. …
> There is at most a preference for education in the neighborhood school.

---

[5] Now codified at 20 U.S.C. § 1412(5)(A).
[6] Now codified at 34 C.F.R. § 300.116(b)(3).
[7] Now codified at 34 C.F.R. § 300.116(c).

*Id*. at 929 (internal citations omitted). Finally, the Court disposed of the legislative history arguments because they were subject to the same fatal flaw: "they simply do not clearly indicate that Congress, in discussing mainstreaming or inclusion and the concept of the LRE for each disabled child, meant anything more than avoiding as much as possible the segregation of disabled children from nondisabled children. They in no way express a presumption that the LRE is always or even usually in the neighborhood school." *Id*.

The same issue was presented to the Tenth Circuit the following year in *Urban*, only with the addition of companion Section 504 and ADA claims; this Court then expanded on its prior ruling in *Murray*. *Urban*, 89 F.3d 720. In *Urban*, parents of a student eligible for IDEA services sued the district for an injunction requiring the district to educate their child at his neighborhood high school. *Id*. at 722. The student's specific program was not offered at his neighborhood school. *Id*. at 722-723. Parents filed an administrative due process complaint and argued, in part, that the school district denied their student a FAPE by assigning him to a school other than his neighborhood school. *Id*. at 723. The first level independent hearing officer held that the student should be put in the program at the non-neighborhood school "only after consideration of all available options" at his neighborhood school and "only if the IEP required such a placement." *Id*. Parents appealed this part of the decision to an ALJ, and requested the school be ordered to

place their child at his neighborhood school. *Id*. "[A]s a matter of law," the ALJ rejected parents' request to order their student be served at his neighborhood school. *Id*. The parents then appealed the ALJ's decision to the district court. *Id*. at 724. The district court granted the school district's motion for summary judgment. Specifically, it noted that the student "has no right, as a matter of law, to placement at his neighborhood school under either the IDEA or the Rehabilitation Act" and further held "the ADA does not give [student] the right to reject the placement selected by school officials." *Id*.

Before the Tenth Circuit, the student's appeal concerning placement was based "solely on the ground that he was denied transition services in a specific location—his neighborhood school[.]" *Id*. at 727. The court disposed of the IDEA claim stating: "as we held in *Murray*, the IDEA does not give him a right to a placement at a neighborhood school." *Id*. (citing *Murray*, 51 F.3d at 928-30). The Tenth Circuit continued: "The IDEA only entitles [student] to an appropriate education, and the state 'satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" *Id*. (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist, Westchester Cnty. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 3049, 73 L.Ed.2d 690 (1982).

The Tenth Circuit reached a similar conclusion in connection with the student's ADA and Section 504[8] claims. The student "maintain[ed] that the ADA requires the District to make whatever 'reasonable modifications' are necessary to accommodate [student] at his neighborhood school[.]" *Id*. at 727. In rejecting this argument, the court first explained that Title II of the ADA "adopts" the substantive standards of Section 504 and that in turn, the Section 504 regulations "generally conform to the standards established by the IDEA … and use substantially the same language regarding a school district's obligations to evaluate each disabled child, create an IEP with parental input, and provide each disabled child with an appropriate education." *Id*. at 727-28 (citing 34 C.F.R. §§ 104.33, 104.35, 104.36.). Thus, the court concluded that the student's ADA claim "is valid

---

[8] Regarding Appellants' Section 504 claims, this Court may affirm on any proper alternative basis supported by the record. *Fields v. City of Tulsa*, 753 F.3d 1000, 1015 (10th Cir. 2014) citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir.2011) ("[w]e have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal.") Accordingly, in the event the Court were to reverse on exhaustion, the Court should consider whether Appellants' Section 504 claims are also barred by *Murray* and *Urban*. Similarly, the Court would be well within its authority to reconsider whether the Appellants even have standing because it is a "threshold issue in every case, which a federal appellate court may raise at any time," regardless of whether the district court expressly addressed the question. *Bd. of Cnty. Commisioners of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002) citing *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir.1998) (internal quotation marks and citations omitted).

only if he is entitled to a placement at [his neighborhood school] under section 504."

The court then considered the requirements of Section 504, in general and in relation to educational placement. Citing Supreme Court precedent, this Court recognized that "section 504 does not require affirmative action to accommodate the disabled." *Id*. (citing *Southeastern Comm. College v. Davis*, 442 U.S. 397, 410-411 (1979)). The court also cited to Fourth and Eighth Circuit cases that "held that section 504 does not require school districts to modify school programs in order to ensure neighborhood placements." *Id*. (citing *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 154-55 (4th Cir. 1991) and *Schultdt v. Mankato Indep. Sch. Dist. No. 77*, 937 F.2d 1357, 1362-63 (8th Cir. 1991) (parentheticals and cert. denied citations omitted)). Based on the foregoing, the Tenth Circuit resoundingly rejected the parents' argument, writing: "Relying on the similarity between the substantive and procedural frameworks of the IDEA and section 504, we conclude that if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under section 504." *Id*. at 728 (internal citations omitted).

The court then distinguished its prior decision in the 1982 case, *New Mexico Association for Retarded Citizens v. New Mexico*, 678 F.2d 847 (10th Cir. 1982). In doing so, the *Urban* court clarified that section 504:

> requires accommodations in a neighborhood school when disabled children cannot receive educational benefits without accommodations; it does not require a school district to modify its program in order to accommodate a single child in a neighborhood school, especially if that child is already receiving educational benefits in another environment.

*Urban*, 89 F.3d at 728. Accordingly, the Tenth Circuit in *Urban* held that "the ADA does not entitle [student] to attend his neighborhood school." *Id.*

*Murray* and *Urban* foreclose the relief sought by Appellants and the District Court was correct to conclude that "[t]hese precedents do not leave the door open for this court to find that the IDEA or the ADA requires the SLCSD to make individualized determinations as to *where* special education services should be provided."[9] (JA.1:244.) Throughout the Amended Complaint, the Appellants make allegations regarding obtaining their special education and related services at their neighborhood school. "Both E.J. and H.S. want to attend their neighborhood schools and receive the special education services they are entitled to." (JA.1:44 ¶3.) "Because of the discriminatory way in which SLCSD administers its educational service system, E.J. and H.S. are denied the opportunity, and individualized assessment necessary, to attend their neighborhood school with the special education services they require." (JA.1:45 ¶8.) Indeed, Appellants request

---

[9] It is for this reason that a separate facial discrimination analysis is unnecessary. Because the laws at issue don't provide for the specific remedy sought by Appellants—special education at their neighborhood school—the outcome of that analysis would be superfluous.

an order requiring the District to "make individualized placement decisions for each of the Plaintiffs based on their IEPs and meaningfully consider the full continuum of placement options and supplementary aids and services *necessary to place them at their neighborhood schools*." (JA.1:86 §VIII.E.) That is precisely the type of relief that *Murray* and *Urban* found were unavailable under the statutes at issue. Because the IDEA, Section 504, and the ADA do not give Appellants a right to receive their education at their neighborhood school, then the court cannot order the District to reconsider a student's IEP and expand the "supplementary aids and services necessary to place them at their neighborhood schools[.]" It necessarily follows that if the law does not afford Appellants the right to attend school at their neighborhood school, the District has not been "violating their rights", no declaratory judgment order to that effect can issue, and there is no substantive conduct to be enjoined.

Appellants continue their sleight-of-hand analysis *vis-à-vis* placement versus location[10] to argue the District Court improperly extended the holdings in *Murray* and *Urban* to preclude relief here. Appellants' Br. at 48-50. This argument hinges

---

[10] Perhaps this is no more obvious that where Appellants represent that "even if the location of a particular program cannot be challenged, it is always possible to challenge one's placement." Appellants' Br. at 41. While it is accurate the IDEA allows parents to challenge an individuals' placement in a due process request under 20 U.S.C. § 1415, it is inaccurate to imply that a change in placement necessarily means the location where a student receives his or her education will be at his or her neighborhood school.

on Appellants' mistaken belief that "the practical holding of the District Court's decision is that no child in Utah can ever challenge a more restrictive placement decision if part of their assertion is that they should have been placed in a general education setting[.]" Appellants Br. at 48-49. Again, this lawsuit is not about "placement"; it is about location of services. While a child can always challenge their placement—e.g., general education class, special class, or special school—through a due process hearing request,[11] the IDEA (and by extension Section 504 and the ADA) do not allow for the parent to contest location of services under the guise of a placement dispute. That is what Appellants are trying to do here.

Moreover, nothing in the District Court's Order "forecloses" the individualized LRE analysis in *Ellenberg*. *See* Appellants' Br. at 49. First, *Ellenberg* again speaks of placement—the education services—not of location. The two-step LRE analysis is focused on developing an appropriate IEP for a child and is wholly consistent with the Tenth Circuit's explanation for how to properly

---

[11] Depending on the outcome, that may *affect* the school where a child attends. For instance, if an IEP special class placement were found to be too restrictive and the child was moved to a general education placement, then the location of the child's education could be changed. This could include a return to a child's neighborhood school or the ability to attend a different out-of-boundary school pursuant to open enrollment policies. The opposite also holds true; if a child's placement was changed to a more restrictive setting, the child would likely begin attending the nearest school where the necessary classroom placement was located. Under the IDEA, placement is an IEP Team decision and once the placement is determined, then the location of services is determined from the schools that offer the required placement.

interpret the IDEA's implementing regulations. *See Murray*, 51 F.3d at 929. Accordingly, Appellants argument here suffers the same fatal defect as the argument presented in *Murray* and *Urban*. That defect is the assertion that implicit in the IDEA is a right to attend school at one's neighborhood school. It simply does not exist, and *Murray* and *Urban* explicitly stand for that proposition. Second, under the IDEA and as shown by the hearing officer in E.J.'s hearing, the District complies with the LRE analysis in *Ellenberg* and its placement obligations under IDEA. The hub policy merely states that certain schools will house certain classroom types and it is only when the child is placed into one of those special classrooms—such as Academic Support or Essential Elements—that the hub policy is implicated. In other words, if a student is not determined to need a special class by their respective IEP team, this hub policy never comes into play. Appellants' suggestion to the contrary is disingenuous and relies upon twisting and contorting general facts about how this policy works in order to fit their narrative that the district is discriminating against them. The District Court saw through Appellants' attempts to artfully plead around this fatal defect and properly applied the law applicable to the gravamen of the Amended Complaint. (JA245).

The District Court did not commit any error in its order. Rather is correctly identified the issues in the Amended Complaint, analyzed those issues under the

applicable statutes and interpretive case law, and issued its decision in conformity with controlling legal precedent. The Order should be affirmed in full.

## III. Appellants First and Sixth Issues Were Not Adequately Preserved or Developed

Appellate review "is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). "[A] party does not preserve an issue merely by ... presenting [it] to the district court in a 'vague and ambiguous' manner, or by making a 'fleeting contention' before the district court." *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1206 (10th Cir. 2022) (quotations omitted). "[T]he touchstone on this issue is that 'vague, arguable references to [a] point in the district court proceedings do not ... preserve the issue on appeal.'" *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) citing *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993). "In order to preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time. Parties must be encouraged to 'give it everything they've got' at the trial level. Thus, an issue must be 'presented to, considered [and] decided by the trial court' before it can be raised on appeal." *Id.*, at 1233. Moreover, a party cannot have the district court reversed for an error that it was responsible for causing. *United States v. Morrison*, 771 F.3d 687, 694 (10th Cir. 2014).

## A. Appellants First Issue on Appeal was not Developed and Should Not Be Considered.

Appellants' first issue on appeal challenges whether the District Court applied the appropriate standard of review by not accepting the allegations in the Amended Complaint as true and drawing all reasonable inferences in Appellants' favor. Appellants' Br. at 2. Because Appellants have not developed this argument, this Court should find it waived.

It is not this Court's obligation to search for Appellants' arguments or scour the record to support Appellants' arguments. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments, as Dunkel's did. Judges are not like pigs, hunting for truffles buried in briefs."). Appellants' brief does not contain a section devoted to this argument. Appellants do not identify any *reasonable* inference the Court could have drawn from the well-pleaded facts in the record that it did not so draw, or explain how that inference would affect the outcome. While there are occasional complaints peppered through the Appellants' brief that the District Court did not consider certain facts, the brief is devoid of analysis for how those facts would have changed the outcome. Indeed, under *Murray* and *Urban*, as the District Court found, there is no set of facts Appellants could plead to be entitled to require the

District to educate their children at their neighborhood school. Because Appellants have not satisfied their burden, this argument should be considered waived.

**B.     Appellant E.J.'s and H.S.'s Individual Appeals from The Administrative Decisions Are Not Adequately Preserved.**

Appellants' sixth issue on appeal asserts that District Court did not "acknowledge" E.J.'s and H.S.'s individual appeals of their administrative decisions. Appellants complain the lower court "failed to analyze their IDEA appeals, nor did it review their administrative records or even acknowledge E.J. or H.S.'s respective administrative appeals in its decision[.]" Appellants' Br. at 51. The argument about E.J.'s and H.S.'s individual claims was not properly preserved because it was not presented to the District Court.

E.J.'s and H.S.'s appeals of their respective hearing officer's decision was not adequately raised in the Amended Complaint or argued before the District Court. The Amended Complaint does state that each of the student-Appellants "appeals the administrative decisions and asserts additional claims through this civil action." (JA.1:49 ¶¶40 (E.J.), 47 (H.S.).) The Amended Complaint is then silent as to what E.J. and H.S. intended to appeal from their respective hearing officer decisions. There are no affirmative assignments of error. There are no allegations that factual findings were erroneous. None of the relief prayed for is individualized to either E.J. or H.S. Nowhere do Appellants ask the District Court

to reverse any finding or conclusion of the hearing officer's decisions. (*See generally*, JA.1:43-86.)

If Appellants were appealing individual issues, those issues should be clearly stated. For instance, if H.S. were in fact appealing his individualized order, he was required to request to have the hearing officer's decision reversed, particularly where it concluded that he was not subject to the IDEA because his parents did not consent to IDEA services. (JA.1:41.) And without prevailing on that specific issue, H.S. is not entitled to services under or the protections of IDEA. 20 U.S.C. §§ 1414(a)(1)(D)(i)(II), 1414(a)(1)(D)(ii)(II-III). Similarly, if E.J. is challenging her actual IEP Team placement decision, the factual allegations related to the IEP Team placement decision were required to be in the Amended Complaint, but they aren't there. While E.J. and H.S. were used by the DLC to satisfy the exhaustion requirement of the IDEA, the Amended Complaint pivoted and only asserted generalized, special-education population wide, causes of action. There is simply no presentation of issues in the Amended Complaint that put the District or the Court on notice that there were distinct, individualized, aspects to this appeal other than the relief sought generally for E.J., H.S., and other similarly situated students. (*See generally*, JA.1:43-86.)

Additionally, in response to the Motion to Dismiss, Appellants never argued there were individual issues that were being appealed and needed to be considered

by the District Court. (*See generally*, JA.1:165-206.) Appellants never raised the *modified de novo* standard from *Garcia v. Board of Education of Albuquerque Public Schools* in opposition to the Motion to Dismiss the Amended Complaint. (*See generally*, JA.1:165-206.) They did, however, affirmatively represent that "Plaintiffs bring this suit to challenge the District's hub plan, a systemic policy, and an administrative failure at the highest administrative levels of SLCSD." (JA.1:195.) Indeed, in the very next sentence they jettison the appropriateness of "individual claims" as they double-down on the systemic exception to exhaustion. (JA.1:195 ("If the District were adhering to the requirements of the IDEA, ADA, and Section 504, *then perhaps individual claims would be appropriate*.") (emphasis added).)

Moreover, Appellants complain that the trial court did not consider the administrative record, but Appellants did not even attach the administrative records for E.J. or H.S. to either the original Complaint or the Amended Complaint. To the extent any of the administrative record was before the District Court, it is because the District filed the original hearing requests and the hearing officers' decisions in E.J.'s and H.S.'s administrative proceedings as Exhibits to its Motion to Dismiss. (JA.1:9-42, JA.2:249-302). The location of services was a fundamental and recurring issue in both due process hearings. (JA.2:262 ("Order that SLCSD place E.J. in her neighborhood school, currently identified as Dilworth Elementary, in

the LRE, with appropriate supplementary aids and services."); JA.1:25 ("[T]he school district provided substantial evidence that it is has given 'thoughtful consideration' to E.J.'s placement decisions, has developed and implemented an IEP tailored to her individual needs and has determined that the IEP cannot be implemented satisfactorily in Dilworth, her neighborhood school."); JA.1:25-26 ("While it is agreed that socialization is an important aspect, I do not find from the evidence that the student's interest is served by forcing the district to implement her IEP at the neighborhood school. On the contrary, the testimony of her special education teacher, Ms. Eggleston, who testified that she had been providing special education services to the student for the last two years, revealed that the student would not receive educational benefit from such a placement. Eggleston, along with Shelly Halverson, SPED director, and Amanda Roberson, classroom regular education teacher, all testified that because of E.J.'s individual needs, that the collaborative classroom in which she was and is enrolled, is the most suitable option for her. Halverson testified that such supplementary aids and services, as are part of E.J.'s IEP, are not available at her neighborhood school."); JA.1:27 ("I find neither that the district failed to 'meaningfully consider the full continuum of placement options available for EJ in order to allow her to attend the school she would have attended were she not disabled, including the school closest to her home', nor that the district mischaracterized 'the severity of her disability.' The

record is replete with evidence supporting the severity of the student's disability, and the testimony of her education personnel supports the contention that E.J. has need for 'scaffolding' and interventions to access the Tier 1 Instruction she ought to be receiving, based on her abilities and the complexity of the materials being taught to her age appropriate non-disabled peers."); JA.2:288 ("The services which H.S. and others similarly situated require in order to receive a FAPE in an inclusive environment could be provided in a neighborhood school. SLCSD's failure to provide H.S. with such services violates the ADA and IDEA."); JA.2:288 ("Order that SLCSD provide H.S. with appropriate supplementary aids and services in his neighborhood school.").)

Lastly, Appellants' argument ignores the procedural posture of this appeal. This case is a motion to dismiss for failure to state a claim. The question is whether the Amended Complaint contained sufficient factual allegations that make the claims plausible. As it relates to the alleged "individualized" appeals of E.J. and H.S., the answer is clearly no. Aside from stating they are aggrieved and appealing their respective hearing officer's decisions, the Amended Complaint is silent as to what part of the hearing officer's decisions they are challenging.

The argument predicated on the individualized nature of Appellants' appeals is a *post hoc* excuse to avoid dismissal. The Appellants made the strategic litigation decision to pursue something akin to class-wide relief by seeking to

invalidate the SLCSD's hub policy, rather than addressing these issues based on the individualized facts and circumstances of E.J., H.S., or any other student with a disability who disagreed with the hub policy. Neither the original Complaint, the Amended Complaint, or the opposition to the Motion to Dismiss changed course. This Court should reject Appellants' complaint that the District Court did not consider the administrative record in this case.

C.     **Appellants Did Not Argue Plain Error for Either of These Issues, Therefore They Are Waived.**

Appellants did not comply with the requirement to establish plain error to revive these arguments in its principal brief. Accordingly, they are waived.

"To urge reversal of an issue that was forfeited in district court, an appellant must argue plain error. If an appellant does not explain how its forfeited arguments survive the plain error standard, it effectively waives those arguments on appeal." *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019).

Appellants' Brief does not satisfy this requirement. Nowhere in Appellants brief to they so much as state the words "plain error." Nowhere in the brief do they identify the standard for plain error, cite a case for any proposition related to plain error, or otherwise attempt to excuse their failure before the District Court. As Appellants have not satisfied this requirement, this Court should find these arguments were waived.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the District Court's

Order in full.

## **STATEMENT CONCERNING ORAL ARGUMENT**

Although the issues on appeal are straightforward and correctly determined

by the District Court, SLCSD requests oral argument to assist the Court in

resolving the issues on appeal.

DATED this 23rd day of October, 2023.

Respectfully submitted,

/s/ *Matthew S. Brahana*
Joan Andrews
Matthew S. Brahana
FABIAN VANCOTT
95 S. State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jandrews@fabianvancott.com
mbrahana@fabianvancott.com

*Attorneys for Appellees Salt Lake City
School District and the Board of Education
of Salt Lake City Schools*

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure ("FRAP") 32(g)(1), I hereby certify:

1.	This brief complies with the type-volume limitation of FRAP 32(a)(7)(B)(i) because it contains 12,021 words, excluding the parts of the brief exempted by FRAP 32(f) and Tenth Circuit Rule 32(B).

2.	I relied on Microsoft Word processing program to obtain the word count referenced above.

3.	This brief complies with the type-face requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

DATED this 23rd day of October, 2023.

/s/ *Matthew S. Brahana*
Joan Andrews
Matthew S. Brahana
FABIAN VANCOTT
95 S. State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jandrews@fabianvancott.com
mbrahana@fabianvancott.com

*Attorneys for Appellees Salt Lake City School District and the Board of Education of Salt Lake City Schools*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission

is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the

most recent version of a commercial virus scanning program, Bitdefender

Managed Anti-Virus, Product Version 7.8.3.265, Engines Version 7.95474 and last

updated on October 23, 2023 at 7:21 p.m. MST and according to the program are

free of viruses.

DATED this 23rd day of October, 2023.

/s/ *Matthew S. Brahana*
Joan Andrews
Matthew S. Brahana
FABIAN VANCOTT
95 S. State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
jandrews@fabianvancott.com
mbrahana@fabianvancott.com

*Attorneys for Appellees Salt Lake City*
*School District and the Board of Education*
*of Salt Lake City Schools*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October, 2023, I caused a true and correct copy of the foregoing **BRIEF OF APPELLEE** to be served by filing said document with the Court's CM/ECF system upon the following:

Laura Henrie
Michelle Marquis
Katie Cox
Maya V. Anderson
Disability Law Center
960 South Main Street
Salt Lake City, Utah 84101
Telephone: (801) 363-1347
lhenrie@disabilitylawcenter.org
mmarquis@disabilitylawcenter.org
kcox@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org
*Attorneys for Appellants Kristin Jacobs,*
*legal guardian of E.J., Amanda Sancy, legal*
*guardian of H.S., and Disability Law Center*

Selene Almazan-Altobelli
Council of Parent Attorneys and Advocates
P.O. Box 6767
Towson, Maryland 21285
(844) 426-7224
selene@copaa.org

Ellen M. Saideman
Law Office Of Ellen Saideman
7 Henry Drive
Barrington, Rhode Island 02806
(401) 258-7276
esaideman@yahoo.com
*Attorneys for Amici Curiae*

/s/ *Matthew S. Brahana*