No. 23-4058

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

KRISTIN JACOBS, legal guardian of E.J.;
AMANDA SANDY, legal guardian of H.S.;
AND DISABILITY LAW CENTER,
*Plaintiffs-Appellants,*
v.
SALT LAKE CITY SCHOOL DISTRICT;
and BOARD OF EDUCATION OF SALT
LAKE CITY SCHOOLS,
*Defendants-Appellees.*

On appeal from the United States District Court, District of Utah,
Honorable Jill N. Parrish, No. 2:21-cv-00706-JNP-CMR

## **REPLY BRIEF OF APPELLANTS**

Laura Henrie
Michelle Marquis
Katie Cox
Maya V. Anderson
DISABILITY LAW CENTER
960 South Main Street
Salt Lake City, Utah 84101
(801) 363-1347
lhenrie@disabilitylawcenter.org
mmarquis@disabilitylawcenter.org
kcox@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org

*Attorneys for Appellants*

**ORAL ARGUMENT REQUESTED**

November 13, 2023

# Table of Contents

Table of Authorities ................................................................................iii

Summary of the Argument......................................................................... 1

Argument.................................................................................................... 2

    Appellants' Claims are Fundamentally Claims of Discrimination ............... 2

    The Hearing Officer's Decision Underscores Appellants' Allegations of
    Structural Discrimination ............................................................................ 6

    Appellants Allege a Systemic Denial of Individualized Placement Decisions,
    and do not Assert an Absolute Right to Education in the School the Child
    Would Attend if Not Disabled....................................................................... 8

    Appellants' Section 504 Claims are not Properly Subject to Exhaustion....14

    Appellees Present an Array of Arguments Aimed at Distraction by
    Replacing, Confusing, and Ignoring the Arguments Presented in Appellants'
    Opening Brief ............................................................................................15

        Appellees Improperly Extend and Apply the Exception to the 12(b)(6)
        Standard from *North Indiana Gun & Outdoor Shows, Inc.* ....................15

        E.J.'s Due Process Hearing did not Substantially Address the
        Fundamental Aspects of Appellants' Claims and Therefore the
        Hearing Officer's Decision Should not 'Trump' Appellants'
        *Amended Complaint* ................................................................................18

        The Parties are not in Disagreement Regarding the District Court's
        Ability to Review the Administrative Record.........................................19

        Appellees Incorrectly Assert Appellants are to Blame for The District
        Court's Failure to Consider the Administrative Record Because
        Appellants did not Attach the Record to the *Amended Complaint* .........20

Appellants' First Issue on Appeal Merely Asks this Court to Determine if the District Court Applied the Appropriate Standard of Review, Accepting All Allegations in the *Amended Complaint* as True ..............22

E.J. and H.S.'s Appeals of their Administrative Decisions were Properly Preserved ...................................................................................24

Conclusion ...................................................................................................28

Certificate of Compliance ..........................................................................29

Certificate of Digital Submission..............................................................30

Certificate of Service .................................................................................31

# Table of Authorities

Cases

*Carroll v. Lawton Indep. Sch. Dist. No. 8*,
  805 F.3d 1222 (10th Cir. 2015)................................................................. 23
*Combier-Kapel v. Biegelson*,
  242 Fed. App'x 714 (2d Cir 2007)............................................................ 20
*Dubbs v. Head Start, Inc.*,
  336 F.3d 1194 (10th Cir. 2003)................................................................. 15
*Ellenberg v. NMMI*,
  478 F.3d 1262 (10th Cir. 2007)........................................................ 2, 3, 4, 14
*Fry v. Napoleon Cmty. Sch.*,
  580 U.S. 154 (2017) ..................................................................................... 14
*North Indiana Gun & Outdoor Shows, Inc. v. City of Bend*,
  163 F.3d 449 (7th Cir. 1998)............................................................... 16, 17
*Luna Perez v. Sturgis Pub. Sch.*,
  598 U.S. 142 (2023) ..................................................................................... 16
*M.W. by and through his parents, Wang v. Clarke County School District*,
  2008 WL 4449591 *1 ................................................................................. 20
*Murray by and through Murray v. Montrose Cnty. Sch. Dist. RE-1J*,
  51 F.3d 921 (10th Cir. 1995)............................................................... 10, 11
*New Mexico Ass'n for Retarded Citizens v. New Mexico*,
  678 F.2d 847 (10th Cir. 1982)............................................................... 2, 4, 5
*Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1*,
  89 F.3d 720 (10th Cir. 1996)............................................................... 4, 5, 12


Statutes

42 U.S.C. §§ 12131-12132 ................................................................. 13


Regulations

28 C.F.R. § 35.130(b-d) ...................................................................... 13
28 C.F.R. § Pt. 35, App. B .................................................................. 13
34 C.F.R. § 300.114 (a)(2) ................................................................. 13
34 C.F.R. §§ 300.115-116 .................................................................. 13


Other Authorities

USBE SpEd Rules IV.Q.(3)................................................................. 21

## Summary of the Argument

This case concerns allegations of systemic discrimination by Salt Lake City School District ("SLCSD") in the administration of its educational system. Specifically, Appellants allege that students with intellectual disabilities and/or cognitive impairments are preassigned to special class placements at a small handful of hub schools on the basis of the category and perceived severity of their disabilities, provided with unequal educational opportunities, and precluded from individualized placement decisions. This issue implicates the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Individuals with Disabilities Education Act ("IDEA"). Despite this, Appellees' Response Brief largely ignores the structural discrimination alleged by Appellants and instead attempts to selectively choose from Appellants' facts and arguments to construct an alternative narrative. Though inconsistent with the facts alleged in the *Amended Complaint*, Appellees nevertheless insist that Appellants' sole claim consists of an unyielding demand for a more convenient location of services. Appellees also attempt to discount Appellants' factual allegations. These tactics allow Appellees to spend the bulk of their Response Brief outlining reasons that this Court should not accept or review the well-pleaded facts in the *Amended Complaint*. This is because the *Amended Complaint* properly alleges facts that

support violations of the ADA, Section 504, and the IDEA, and that are readily distinguishable from *Murray* and *Urban*.

## Argument

### Appellants' Claims are Fundamentally Claims of Discrimination

Appellees go to great lengths to narrow the scope of Appellants' claims to merely the "location of services" in an attempt to sidestep any substantive analysis of Appellants' claims under the ADA or Rehab Act. (Appellees' Br. at 31-41.) Yet, their insistence that Appellants' claims are solely limited to a disagreement over the location of services ignores entire swaths of the record which assert that E.J., H.S., and similarly situated students were all preassigned to both a special class placement and then a hub school, as result of their disability category alone. (JA.1:059-66 ¶¶89-90,93,96,107-109,116-17,119,121-23; JA.1:069-71 ¶¶144-45,154-58,163-64; JA.1:074-75 ¶¶176-77,179,181-85[1].) In fact, SLCSD provides curiously little analysis as to why the framework laid out by this Court in *Ellenberg v. NMMI*, 478 F.3d 1262 (10th Cir. 2007) and *New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847 (10th Cir. 1982) should not be properly applied in this case.

In *Ellenberg,* this Court articulated that when an educational standard is facially discriminatory, the IDEA does not offer relief. 478 F.3d at 1280-81. The

---

[1] Appellants refer to the parties' Joint Appendix as "JA."

Court further asserted that the IDEA is not the correct statutory framework to analyze such a claim, noting that "the IDEA is simply not a discrimination statute." *Id.*

E.J. and H.S. have always asserted, dating back to the filing of their due process complaints, that the hub policy subjects them and similarly situated students to discriminatory treatment, and is therefore barred under the ADA. (JA.2:250-75; JA.2:277-302.) Appellees' Response Brief simply lacks any substantive analysis that rebuts Appellants' assertion that, just like in *Ellenberg*, the *Amended Complaint* contends that entrance into the hub system is discriminatory because it is based solely on the fact that Appellants have been diagnosed with intellectual disabilities and/or cognitive impairments. (Appellees' Br. at 40-41.) The *Amended Complaint* clearly and repeatedly asserts that the hub school policy presumes that any child with an intellectual disability and/or cognitive impairment must have a disability that is inherently too severe to be served in a general education setting—thus rendering any individual placement decision for these children to be unnecessary. (JA.1:059-66 ¶¶89-90,93,96,107-109,116-17,119,121-23; JA.1:069-71 ¶¶144-45,154-58,163-64; JA.1:074-75 ¶¶176-77,179,181-85.)

To the extent that SLCSD responds to these arguments at all, it is not to analyze the contention that a discrimination framework should be applied, but

rather to dispute the factual basis of Appellants' *Amended Complaint*, and to assert that SLCSD complied with the *Ellenberg* Court's analysis of the least restrictive environment ("LRE") based on Appellees' alternative facts. (Appellees' Br. at 40-41.) This argument is problematic because Appellees' declaration that SLCSD did conform to the *Ellenberg* Court's LRE analysis in no way contends with the assertion made in Appellants' Opening Brief that *Ellenberg* stands for the proposition that Appellants' claims should be analyzed under the ADA because they assert claims of discrimination. In addition, in *Ellenberg*, the Court found that a child with a disability could be taught in the LRE and *still* be subjected to discrimination under the ADA. 478 F.3d at 1282. Even assuming *arguendo* that SLCSD did conform to the appropriate LRE analysis, it still would not necessarily preclude their system from violating the ADA.

Similarly, while Appellees offer a cursory acknowledgement that the *Urban* Court distinguished its holding from *New Mexico Association*, they again offer no substantive analysis of why Appellants' claims do not fall under its framework. (Appellees' Br. at 37-38.) Appellees include the following language from *Urban*:

> section 504 requires accommodations in a neighborhood school when disabled children cannot receive educational benefits without accommodations; it does not require a school district to modify its program in order to accommodate a single child in a neighborhood school, especially if that child is already receiving educational benefits in another environment.

(*Id.* (quoting *Urban*, 89 F.3d at 728).). Then Appellees attempt to dispose of *New Mexico Association* entirely by quoting the *Urban* Court's conclusion that "the ADA does not entitle [student] to attend his neighborhood school." (*Id.*) While this language is technically accurate, it entirely ignores the distinction being made by the *Urban* Court in distinguishing its holding from *New Mexico Association*, namely that while the ADA and Section 504 do not require a school district to modify a program in order to accommodate a *single student*, it does "require[] accommodation in a neighborhood school when disabled children cannot receive education benefits *without* accommodation." 89 F.3d at 728. Appellants' *Amended Complaint* and Opening Brief detailed numerous ways in which SLCSD's hub policy prevents students with intellectual disabilities and/or cognitive impairments from receiving educational benefits without accommodations. (JA.1:075-77 ¶¶181-97; Appellants' Br. at 44, 46.) For example, without a modification to the hub school policy, E.J., H.S., and similarly situated students are denied the benefits of consideration in a general education placement, the opportunity to attend neighborhood schools with their friends and siblings, reasonable travel time to and from school, and access to existing programs and services, including resource classes and push-in/pull-outs. (*Id.*) Appellees' Response Brief, like the District Court's opinion, ignores these arguments and related facts entirely. (JA.1:241-245; Appellees' Br. at 31-41.)

While Appellees do not engage with these cases on the merits, they instead assert that the factual allegations and claims of discrimination in the *Amended Complaint* should be given no weight because the Hearing Officer found against E.J. on her IDEA claims in her due process hearing. (Appellees' Br. at 23-27.) This rather audacious argument enforces a consistent theme maintained throughout Appellees' Response Brief that, because they disagree with Appellants' characterization of the hub system, and the facts as alleged, they are therefore entitled to a wholesale dismissal of the case. (*Id.*)

### The Hearing Officer's Decision Underscores Appellants' Allegations of Structural Discrimination

Appellees attempt to replace the allegations contained in Appellants' *Amended Complaint* for one Hearing Officer's decision is both procedurally and substantively suspect as discussed at length *infra*. In fact, the Hearing Officer's decision underscores Appellants' allegations of structural discrimination. For example, one of the quotations cited by Appellees in an effort to undermine the *Amended Complaint* specifically states that the Hearing Officer found that SLCSD had not "mischaracterized the severity" of E.J.'s disability and points out that she required "scaffolding" in order to access the general curriculum. (Appellees' Br. at 26.) This finding is entirely consistent with Appellants' assertion that, while unlawful, SLCSD uses the perceived severity of intellectual disabilities and/or cognitive impairments to drive placement decisions, and also uses the need for

accommodations and modifications to access general education curriculum as a basis for removal. (JA.1:057-58 ¶83; JA.1:077 ¶198.)

While the Hearing Officer did find that E.J.'s placement decision had been properly considered under the IDEA, E.J. was specifically disallowed from presenting evidence of the hub's discriminatory scheme, and its application to students with intellectual disabilities and/or cognitive impairments.[2] (JA.1:048 ¶36.) In fact, SLCSD objected to any mention of the hub policy or similarly students as outside of the scope for E.J.'s due process hearing. (JA.1:048 ¶35.) The Hearing Officer agreed with this framework and dismissed E.J.'s ADA claims, and those on behalf of similarly situated students. (JA.1:048 ¶33.)

Disregarding all of Appellants' facts that support inferences of discrimination because of the decision of a single hearing officer would continue to deny E.J., H.S., and similarly situated students any forum to hear the totality of their claims. Though two due process hearings have been filed, as well as an action in federal district court, none of these forums have so much as analyzed a single well-pleaded fact that supports an inference of discrimination. (JA.1:014-031;

---

[2] While the Hearing Officer noted that witness testimony had taken place over the course of four days, he did not include a single citation to particular record testimony, nor to any specific record document. In addition, the Hearing Officer did not cite to, nor summarize the services outlined in E.J.'s IEP—making his finding that she could not be satisfactorily served in her neighborhood school incomplete at best as there was no analysis of what her IEP said or required.

JA.1:034-42; JA.1:229-45.) These facts include, but are not limited to, statements from SLCSD's Special Education Director that "regardless of [a student's] disability" they would go to a hub (JA.1:071 ¶158), that SLCSD routinely uses IQ as a dividing line for children with intellectual disabilities and/or cognitive impairments to determine their placement in a special class (JA.1:075 ¶¶184-85), and that SLCSD's professionals do not consider placement in general education for students with low IQs. (JA.1:075 ¶¶182-83.) These facts support the contention that E.J., H.S., and similarly situated students have been subjected to discrimination. There must be a forum for these facts and these arguments to be heard.

### Appellants Allege a Systemic Denial of Individualized Placement Decisions, and do not Assert an Absolute Right to Education in the School the Child Would Attend if Not Disabled

Appellees dismiss allegations that the hub policy systemically denies students with intellectual disabilities and/or cognitive impairments the right to an individualized placement decision by repeatedly misconstruing Appellants' assertions as arguments for an absolute right to an education in the school a student would attend if not disabled. (Appellees' Br. at 30-41.) Appellees rely extensively on conclusory statements and blatant mischaracterizations of the facts outlined in the *Amended Complaint* in an effort to ramrod the case into a fact pattern more favorable to their position.

In summarily disregarding the actual content of Appellants' argument as a "red herring", Appellees attempt to construct an alternative version of Appellants' facts and arguments that is more suitable to their narrative. (Appellees' Br. at 30.) For example, Appellants have never disagreed that "placement" refers to the nature of the educational program itself rather than a particular physical location. (JA.1:077 ¶198.) Similarly, Appellants have never asserted that a parent is legally entitled to dictate the location of a given placement, and Appellants' Opening Brief contains no such proposition. (Appellants' Br. at 44.)

These misleading statements attempt to recast the underlying issue of this case as an unyielding demand for more convenient service locations in an effort to avoid engaging with the real issue at play: namely, that SLCSD categorically refuses to consider general education placements for students with intellectual disabilities and/or cognitive impairments. (JA.1:045-46 ¶¶17-19.) When Appellants discuss specific locations in their *Amended Complaint* and Opening Brief, it is purely in reference to the discriminatory practice of congregating students with intellectual disabilities and/or cognitive impairments in segregated self-contained placements at hub schools, regardless of their individual needs. (JA.1:067 ¶¶132-33; JA.1:069 ¶¶144-45; JA.1:077 ¶197.)

Appellees' contention that SLCSD makes individualized placement decisions, and that assignment to a hub school occurs on a case-by-case basis, is

the crux of the factual dispute between the parties.[3] The facts alleged in the *Amended Complaint* and its attachments, however, demonstrate that SLCSD does not individualize nor consider the full continuum of placement options for students with intellectual disabilities and/or cognitive impairments. (JA.1:051 ¶57; JA.1:061 ¶¶96,98; JA.1:070-71 ¶¶152-58; JA.1:075 ¶¶182-85.)

Appellees' insistence on presenting Appellants' position solely as a matter of service location rather than placement is explained by their extensive reliance on *Murray* and *Urban*, each of which are clearly distinguishable from the facts at hand. In *Murray*, parents of a student with cerebral palsy and intellectual disabilities challenged their IEP team's recommendation that their son attend a program for students with "severe/profound needs" at a school several miles from the family's home. 51 F.3d at 924.

Notably, the IEP team in *Murray* elected to remove the student to an alternative program only after it was able to clearly demonstrate that the student struggled to make appropriate progress even when provided with auxiliary services and supports in the general education setting. *Id.* After carefully evaluating the student, the IEP team in *Murray* was able to provide specific, individualized justifications both for why the general education setting was not the student's LRE

---

[3] Importantly, factual disputes should not be a basis for dismissal of claims at this stage of the litigation.

and why the more restrictive proposed setting would meet the student's specific needs. *Id.* The plaintiff in *Murray*, unlike Appellants, specifically challenged the location of services rather than the adequacy of the proposed placement, arguing that the IDEA establishes a presumption, rather than merely a preference, in favor of the school a student would attend if nondisabled. *Id.* at 928.

In contrast, Appellants make no such assertion. Unlike *Murray*, where the plaintiffs challenged the removal of an individual child from an individual school by an individual IEP team, Appellants challenge a district-wide policy which actively interferes with the ability of individual IEP teams to meaningfully consider a general education *placement* for students with intellectual disabilities and/or cognitive impairments in the first place, regardless of where such a placement might be located. (JA.1:070-71 ¶¶153,158; JA.1:062-63 ¶¶107-08; JA.1:065-66 ¶¶119,122-23.) Again, unlike in *Murray*, SLCSD also cannot point to specific, individualized reasons why none of its students with intellectual disabilities and/or cognitive impairments can be educated in general education with supportive services, instead relying on vague statements about the severity of their disabilities which appear to be based on nothing more than outdated assumptions and stereotypes about the capabilities of such students. (JA.1:064 ¶117; JA.1:075 ¶¶183-185.) While Appellees use *Murray* to foreclose even the slightest possibility of placement in general education at their neighborhood schools, E.J., H.S., and

similarly situated students yearn for merely the same opportunity afforded to the student in *Murray*: to be provided with an individualized placement based on their unique needs instead of being preassigned based on disability category.

Similarly, in *Urban*, the Tenth Circuit held that the plaintiff "bases his appeal solely on the ground that he was denied transition services in a specific location—his neighborhood school in Evergreen." 89 F.3d at 727. As in *Murray*, the plaintiff did not argue that the student was denied meaningful consideration of how his needs could be met in a general education setting prior to being removed to a more restrictive environment, or point to evidence that the school district predetermined his placement at an administrative level. Instead, the plaintiff claimed that the LRE statute on its face entitled the student to the same services – and therefore the *same* placement – but at a particular location, "as a matter of law." *Id*. at 725. Here, the plaintiff specifically challenged the location of services, and the student had already received an individualized placement decision. As such, the case is not analogous to the facts at hand.

In misapplying *Murray* and *Urban*, Appellees insist that, because there is no absolute right to attend a neighborhood school, a court could order no relief because there is no violation of law to be enjoined. (Appellees' Br. at 39.) But, again, this conclusion is not consistent with the facts alleged or the relief requested in the *Amended Complaint*. In addition, a court can certainly order an end to a

discriminatory policy, or that a party must comply with existing law. This is ultimately all that Appellants are requesting in the instant case. Students with intellectual disabilities and/or cognitive impairments have the right under the ADA not to be subjected to discrimination based on a school district's methods of administration. (JA.1:055-56 ¶¶75-77 (quoting 42 U.S.C. §§ 12131-12132, 28 C.F.R. § 35.130(b-d), and 28 C.F.R. § Pt. 35, App. B.) The IDEA does confer a right to receive an individualized placement decision. (JA.1:057-58 ¶¶83-84 (citing 34 C.F.R. §§ 300.115-116.) The IDEA's implementing regulations also confer a right to only be removed from a general education environment when education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. (JA.1:057 ¶82 (quoting 34 C.F.R. § 300.114 (a)(2)).) This standard necessarily requires an individualized assessment based on the specific services required in a particular student's IEP. (JA.1:057 ¶83.) As a result, it is clear that a court can order the relief actually requested by Appellants.

Just as SLCSD cannot force students with intellectual disabilities and/or cognitive impairments into a one-size-fits-all paradigm simply because doing so would be most administratively convenient, Appellees similarly cannot do away with legitimate claims of systemic predetermination by relying on demonstrably inapposite cases.

**Appellants' Section 504 Claims are not Properly Subject to Exhaustion**

Appellants discuss this issue at length in the Opening Brief. (Appellants' Br. at 52-58.) While Appellants' Section 504 claims may implicate FAPE, they are more aptly described as discrimination claims because they allege that SLCSD is subjecting students with intellectual disabilities and/or cognitive impairments to substandard and unequal services and educational opportunities. (JA.1:060 ¶95; JA.1:064 ¶116; JA.1:067 ¶¶131,133-34; JA.1:075-76 ¶¶186-187,190-91; JA.1:077-77 ¶¶188-190; JA.1:079 ¶207.)

The Supreme Court has clarified in two unanimous decisions that exhaustion is not required wherein the requested relief is simply unavailable under the IDEA's administrative process. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017); *Luna Perez v. Sturgis Pub. Sch.* 598 U.S. 142, 150 (2023). In *Ellenberg*, the Tenth Circuit came to a similar conclusion, noting that the IDEA is not an antidiscrimination statute, and such an administrative process would not "offer insight into the merits of a discrimination claim." 478 F.3d at 1275, 1280-81. The Hearing Officers clearly agreed, dismissing the ADA claims for lack of jurisdiction, along with any claims related to similarly situated students. (JA.1:016; JA.1:036.) Therefore, the parties do not have to guess how the Section 504 claims of discrimination would have been dispatched by both due process Hearing

Officers. It strains credulity to assert that exhausting these claims at the administrative level would have achieved any result other than a dismissal.

### Appellees Present an Array of Arguments Aimed at Distraction by Replacing, Confusing, and Ignoring the Arguments Presented in Appellants' Opening Brief

Appellees raise many issues in their Response Brief in an apparent attempt to point to bases for dismissal separate and apart from the findings contained in the District Court's decision. Curiously, none of these issues are framed in a robust or accurate manner. While none of these arguments are ultimately dispositive, in an effort to assist the Court, Appellants respond as follows.

Appellees Improperly Extend and Apply the Exception to the 12(b)(6) Standard from *North Indiana Gun & Outdoor Shows, Inc.*

It is well established that the court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for relief that may be granted. *Dubbs v. Head Start, Inc.* 336 F.3d 1194, 1201 (10th Cir. 2003). When considering a Rule 12(b)(6) Motion, the Court must accept all factual allegations contained in the Complaint as true with all reasonable inferences drawn in the plaintiff's favor. *Id.* at 1201.

Appellees argue that Appellants' descriptions of the hub system and its application in the *Amended Complaint* are not entitled to be construed as true because those descriptions are contradicted by the Hearing Officer's decision in

E.J.'s administrative due process hearing. (Appellees' Br. at 23.) This argument fails for several reasons, as explained in further detail below.

Appellees' claim that a departure from the well-established 12(b)(6) standard is warranted in this case based on an exception that stems from *North Indiana Gun & Outdoor Shows, Inc. v. City of Bend*, 163 F.3d 449, 454 (7th Cir. 1998). In that case, the Seventh Circuit Court of Appeals examined whether the District Court had correctly determined that letters from the defendant attached as exhibits to the plaintiff's complaint should have been credited over the allegations made in the complaint. *Id.* at 450. The Court of Appeals ultimately held that the District Court had erred in crediting the statements in the letters over the allegations in the complaint, reversing and remanding the case for further proceedings. *Id.* at 457.

Appellees' reliance on this case is perplexing for a number of reasons. First, there is no evidence that the District Court considered the administrative record in crafting the Decision. Second, the plain language of the cited rule demonstrates that it does not apply in this case and certainly does not apply in the way that Appellees attempt to use it. The Seventh Circuit rule states, "[w]hen a written instrument contradicts allegations in the complaint *to which it is attached*, the exhibit trumps the allegations." *Id.* at 454 (emphasis added). This exception contemplates a specific situation where there is a conflict between allegations in

the complaint and statements in documents that are attached to the complaint. Yet, throughout their Response Brief, Appellees attempt to extend this rule far beyond its intended application.

Specifically, Appellees assert that this rule stands for the proposition that the District Court correctly disregarded Appellants' factual allegations in the *Amended Complaint* because the facts alleged were contradicted by the Hearing Officer's decision in E.J.'s due process. (Appellees' Br. at 23.) In doing so, Appellees conveniently ignore the factual distinction between documents they appended to their *Motion to Dismiss* and exhibits attached by a plaintiff to their own complaint. Moreover, even if Appellants had attached the Hearing Officer's decision to the *Amended Complaint*, this rule would still not apply because the Hearing Officer's decision is not contradictory evidence; rather, it is the basis of their appeal.

Appellees concede that the argument that SLCSD fails to consider the individual needs of students and instead discriminates on the basis of disability category "has legs if the Amended Complaint stands alone." (Appellees' Br. at 27.) Therefore, it seems that both parties are in agreement that the District Court did not apply the appropriate standard in considering the *Motion to Dismiss* because there is no evidence that it accepted Appellants' allegations as true.

At different points throughout their Response Brief, Appellees reference the rule from *North Indiana Gun & Outdoor Shows, Inc.*, stretching it to suit their

purpose. In one footnote, Appellees write, "[a]s noted above and explained below, the District Court had exhibits before it that were part of the administrative record and those exhibits 'trump' allegations when there is a conflict." (Appellees' Br. at 18, fn. 4.) Later, Appellees write, "[here], the Court has the hearing officer's decision. That exhibit and the facts contained therein 'trump' the Appellants' self-serving allegations in the Amended Complaint." (*Id.* at 27.)

Not only does their incorrect application of the rule ignore the fact-specific analysis in the case, but it also seems that they misunderstand the holding of the case as well. In *North Indiana Gun & Outdoor Shows*, the Appeals Court held that the exhibits that were attached to the complaint should not have been credited over the complaint; thus, if the Court were to apply this rule to the case at hand, it would actually lead to the opposite outcome.

<u>E.J.'s Due Process Hearing did not Substantially Address the Fundamental Aspects of Appellants' Claims and Therefore the Hearing Officer's Decision Should not 'Trump' Appellants' *Amended Complaint*</u>

In E.J.'s administrative due process hearing, the Hearing Officer refused to allow any testimony, evidence, or argument relating to either the hub policy or the discriminatory treatment of E.J. and similarly situated students within SLCSD. (JA.1:048 ¶¶33,35-36.) As such, E.J. had no opportunity to present any of this evidence to the Hearing Officer for consideration. (*Id*.) Thus, the Hearing Officer's decision was based on an inaccurate and incomplete record. Further, the Hearing

Officer only looked at the IDEA claims and only considered evidence specific to E.J. (*Id.*; JA.1:015.) Given that the Hearing Officer would not consider any evidence relating to SLCSD's hub policy or the discriminatory treatment of E.J. and other similarly situated students, it would be nonsensical to disregard all of the allegations in the *Amended Complaint*, many of which are not specific to E.J., based on one Hearing Officer's conclusions.

Equally nonsensical is the proposition that a written decision forming the basis of an appeal is the same kind of contradictory evidence discussed above. To be clear, this is an appeal of the Hearing Officer's decision; thus, there will necessarily be disagreement between the decision and the allegations in the *Amended Complaint*. Indeed, any appeal from an unfavorable decision would routinely include discordant statements between the decision and the position of the appealing party. Ultimately, Appellees are not arguing that the Hearing Officer's decision should be given some degree of administrative deference; rather, they are urging this Court to accept their alternative facts in wholesale replacement of the allegations contained in the *Amended Complaint*. (Appellees' Br. at 23-27.) This is simply not appropriate at this stage in the litigation.

<u>The Parties are not in Disagreement Regarding the District Court's Ability to Review the Administrative Record</u>

In their Response Brief, Appellees cite two cases, *Combier-Kapel v. Biegelson,* 242 Fed. App'x 714, 715 (2d Cir 2007)*,* and *M.W. by and through his*

19

*parents, Wang v. Clarke County School District, No. 3:06-cv-49(CDL), 2008 WL 4449591 *1* to stand for the proposition that courts reviewing IDEA appeals regularly consider the administrative record on a motion to dismiss. (Appellees' Br. at 24.) As a threshold issue, Appellees' use of "regularly" seems misplaced as they cite only two cases: the first case is out-of-circuit while the other is unpublished, and therefore, neither is binding authority within the Tenth Circuit.

However, it is important to note that the parties are not actually in disagreement about whether the District Court can consider the administrative record in deciding a 12(b)(6) motion; this is yet another distraction by Appellees. Appellants not only agree that the District Court can review the administrative record, but raised concerns regarding the District Court's failure to do so in the Opening Brief. (Appellants' Br. at 51.) Specifically, Appellants take issue with the fact that the District Court did not review either E.J. or H.S.'s administrative records or even acknowledge E.J. or H.S.'s administrative appeals in its decision granting dismissal of all claims. (*Id.*; JA.1:232-35.)

> Appellees Incorrectly Assert Appellants are to Blame for The District
> Court's Failure to Consider the Administrative Record Because Appellants
> did not Attach the Record to the *Amended Complaint*

Appellees are quick to assign blame to Appellants for not providing the District Court with the administrative record in this case, arguing that this Court should reject any argument that the District Court erred by not considering the

administrative record because Appellants did not attach the administrative record to the *Amended Complaint*. (Appellees' Br. at 19, 46, 49.)

Appellees claim that this failure is an error attributable to Appellants but cite no rule or authority that states such a requirement. (*Id.* at 19.) Appellees then credit themselves for providing the District Court with a portion of the administrative record—namely the original hearing requests and the Hearing Officer's decisions in E.J. and H.S.'s administrative proceedings—which Appellees attached as exhibits to their *Motion to Dismiss*. Of note, Appellees emphasize having provided the District Court with the administrative record when, in actuality, they only provided the part of the record that favors their position.

To the original point, in Utah it is unclear which party bears the responsibility of providing the administrative record to the District Court. In other states, there are clearly defined rules that outline the procedure for the transmittal of the administrative record to the District Court.[4] Utah, however, is silent on this issue. USBE SpEd Rules IV.Q.(3) (published June 2023.)) Therefore, it is tenuous at best for Appellees to assert that Appellants should be foreclosed from making any argument regarding the District Court's failure to consider the administrative record.

---

[4] https://odr-pa.org/wp-content/uploads/ODR_Parent_Guide_English.pdf at 100; https://www.oregon.gov/ode/rules-and-policies/Documents/guidelinesforreqappeal.pdf.

Moreover, it appears that this argument is another distraction from the actual concern raised by Appellants, which is that the District Court erred in not considering the administrative record in this case. Throughout the District Court decision, there are no citations to the administrative record. (JA.1:229-45.) There are no references to witness testimony, exhibits, or other evidence that might have formed the basis of the Hearing Officer's decision. (*Id.*) In fact, there is not a single reference to the Hearing Officers' decisions contained in the entirety of the District Court's opinion. (*Id.*) If the court had considered the administrative record, the decision would be replete with references to various parts of the record; however, there are none.

Similarly, even if the District Court had considered the "full" administrative record from E.J.'s due process hearing, the record would still be far from complete. As argued above, the most significant and relevant evidence of Appellants' case was specifically excluded from the administrative proceedings by the Hearing Officer. Thus, reliance on the incomplete record from those proceedings is far from dispositive in this case.

### Appellants' First Issue on Appeal Merely Asks this Court to Determine if the District Court Applied the Appropriate Standard of Review, Accepting All Allegations in the *Amended Complaint* as True

In their Response Brief, Appellees insist that the issue of whether the District Court, in granting Appellees' *Motion to Dismiss* in its entirety, i) accepted

all allegations in the *Amended Complaint* as true, and ii) drew all reasonable

inferences in Appellants' favor, was not developed as an argument in Appellants'

Opening Brief. (Appellants' Br. at 2; Appellees' Br. at 43.) Appellees themselves

restate this issue as "whether the District Court applied the appropriate standard of

review by not accepting the allegations in the Amended Complaint as true…"

which is precisely the argument made throughout Appellants' Opening Brief.

(Appellees' Br. at 43.)

The question of whether the District Court applied the appropriate standard

of review at any particular stage of litigation is core to the assessment this Court

undertakes when reviewing any lower court's decision. *Carroll v. Lawton Indep.*

*Sch. Dist. No. 8*, 805 F.3d 1222, 1226 (10th Cir. 2015). Here, the question is

whether the District Court applied the typical 12(b)(6) standard in reviewing

SLCSD's *Motion to Dismiss*, as discussed above. Appellants' Opening Brief is

replete with references to facts alleged that were not considered or not construed in

the light most favorable to Appellants by the District Court, as well as examples of

facts the District Court simply chose not to contend with or analyze in its

*Memorandum Decision and Order*. (Appellants' Br. at 29-32, 34, 35, 42).

Not only do Appellees again attempt to create a distraction by greatly

abridging and misstating the relief requested by Appellants in their *Amended*

*Complaint* ("there is no set of facts Appellants could plead to be entitled to require

the District to educate their children at their neighborhood school"), but their insistence that Appellants have somehow waived this Court's ability to consider the District Court's application of the appropriate standard of review is as remarkable as it is inaccurate. (Appellees' Br. at 43-44; Appellants' Br. at 29-32.) Although Appellees cite many cases, none of them stand for the proposition that an appellate court should not apply the standard of review corresponding to the appropriate stage of litigation. Ultimately, this argument is simply an unwillingness to contend with the crux of this appeal.

<u>E.J. and H.S.'s Appeals of their Administrative Decisions were Properly Preserved</u>

SLCSD next contends that the issue of whether the District Court erred in dismissing E.J. and H.S.'s IDEA due process appeals at the motion to dismiss stage was not properly preserved because the appeals of the administrative decisions were not presented to the District Court. (Appellants' Br. at 3; Appellees' Br. at 44.) SLCSD suggests that the appeals were not adequately raised in the *Amended Complaint* or argued before the District Court, that none of the relief prayed for is individualized to E.J. or H.S., that there were no allegations that factual findings were erroneous, and that Appellants did not ask the District Court to reverse any finding or conclusion of either administrative decision. (Appellees' Br. at 44-45.) Further, they assert that Appellants never argued in response to the *Motion to*

*Dismiss* that there were individual issues that were being appealed and should be considered by the District Court. (Appellees' Br. at 45-46.)

Unfortunately, Appellees' attempt to discount this issue is simply inaccurate. Appellants' *Amended Complaint* outlined a) the administrative process and exhaustion issue, including an explanation of one-tier versus two-tier states, b) that the complaint was not limited to the IDEA claims considered during due process, c) that both ADA claims and all analysis related to similarly situated students were dismissed from both due process cases for lack of jurisdiction, d) that the scope of the facts presented during E.J.'s due process hearing had been narrowed to individual facts with no consideration of the effect of the hub school system on E.J., e) that both E.J. and H.S.'s Hearing Officer decisions were final with no additional opportunity for administrative review, f) that both E.J. and H.S. were aggrieved as a result of these decisions, and g) that both E.J. and H.S. were appealing their respective administrative decisions and asserting additional claims through the present civil action. (JA.1:047-49 ¶¶26,28,33,35-36,38-40,45-47.)

Further, the ADA and IDEA claims brought in both E.J. and H.S.'s due process hearing requests, as well as the proposed relief requested in each, were brought again in the claims sections and prayer for relief of the *Amended Complaint* (JA.2:259-61; JA.2:285-88; JA.1:080-81 ¶217; JA.1:083-85 ¶234; JA.1:085-86 §VIII.A,C-E,G-H.)

For Appellees' part, although two footnotes in Appellees' *Motion to Dismiss* briefing suggest that Appellees were flirting with the supposition that E.J. and H.S. had not appealed their due process decisions, that same briefing also clearly recognized that Appellees were bringing a 12(b)(6) motion in response to an IDEA appeal, and that the District Court was being asked to review IDEA due process rulings. (JA.1:154 fn. 6; JA.1:217 fn. 7; JA.1:155.)

In Appellants' *Memorandum in Opposition* to Appellees' *Motion to Dismiss*, Appellants reiterated that the current civil action was an appeal of both H.S. and E.J.'s due process rulings, and that both E.J. and H.S. had suffered distinct and ongoing injuries because of these decisions. (JA.1:184; JA.1:195-96.) Specifically, the *Opposition* stated that:

> [Appellees] curiously contend that not only is H.S. not entitled to raise his substantive IDEA issues in a due process hearing, but also that he should not have any opportunity to appeal that decision in federal court. If this were true, then H.S. would not be entitled to process at any stage, which directly contravenes the procedural protections set forth by Congress in the IDEA.

(JA.1:184.)[5] Appellants also agreed with Appellees' assertion that the record was replete with detailed allegations as to the IDEA, reasoning that the record had been developed as to individual IDEA violations because that was the only process that had been made available to Appellants to date. (JA.1:195-96). Appellants further

---

[5] On page 46 of Appellees' Response Brief, Appellees refer to a "fundamental and recurring issue in both due process hearings." Unfortunately, H.S. was not afforded a due process hearing.

clarified that, through the *Amended Complaint*, E.J., H.S., and the DLC, on behalf of similarly situated students "now appeal their IDEA due process rulings and bring their systemic ADA and Section 504 claims to federal court." (JA.1:196.)

Ultimately, a civil action brought in state or federal district court following administrative exhaustion under the IDEA is, by its nature, an appeal. Any suggestion by Appellees that they, or the District Court, were ignorant to this reality is, at best, a fiction. And the transcript of the Hearing on the *Motion to Dismiss* reflects a clear understanding by both Appellees and the District Court that this action included appeals of E.J. and H.S.'s administrative decisions. (JA.3:311 ("[Mr. Brahana:] …because this is an appeal from an administrative record…"); JA.3:312 ("[Mr. Brahana:] …the due process hearing before [USBE], the predecessor claim to the suit being filed…"); JA.3:327 ("[Ms. Cox:] The IDEA provides an explicit right to appeal a due process decision to federal or state court."); JA.3:344-45 ("[The Court:] How do we factor into reviewing a decision from an aggrieved parent? Do we have to say no, we can look at the District's resource allocation needs and those trump what's in the best interests of the individual child? How does that all weigh out on a review level?"); JA.3:347 ("[Mr. Brahana:] And, you know, we're not saying that the student did not have a right to appeal to the district court. Clearly under the statute, they did have a right to appeal to the district court.").)

While Appellees may wish to frame E.J. and H.S.'s appeals as insufficient, this is simply not the case. Both due process requests were primarily predicated on the nature and impact of SLCSD's hub policy, and those same individual and systemic claims were asserted in the *Amended Complaint*. (JA.2:259-61; JA.2:285-88; JA.1:080-81 ¶217; JA.1:083-85 ¶234; JA.1:085-86 §VIII.A,C-E,G-H.) The IDEA's administrative process is simply not equipped to address such systemic and far-reaching alleged violations. As such, an appeal imbedded in a broader civil action is the only vehicle available for Appellants to assert the totality of their individual and systemic claims.

## Conclusion

For the foregoing reasons, this Court should reverse the dismissal of each of Appellants' claims.

*s/ Laura Henrie*
Laura Henrie
Michelle Marquis
Katie Cox
Maya V. Anderson
Disability Law Center
960 South Main Street
Salt Lake City, Utah 84101
(801) 363-1347
lhenrie@disabilitylawcenter.org
mmarquis@disabilitylawcenter.org
kcox@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org

*Attorneys for Appellants*

**Certificate of Compliance**

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements**

1. This document complies with type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 6,348 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: because this brief has been prepared in a proportionally space typeface using Microsoft 365 Word Version 2308 in a 14-point Times New Roman font.

November 13, 2023

*s/ Laura Henrie*
Laura Henrie
Michelle Marquis
Katie Cox
Maya V. Anderson
DISABILITY LAW CENTER
960 South Main Street
Salt Lake City, Utah 84101
(801) 363-1347
lhenrie@disabilitylawcenter.org
mmarquis@disabilitylawcenter.org
kcox@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org

*Attorneys for Appellants*

**Certificate of Digital Submission**

I hereby certify that with respect to the foregoing:

1. all required privacy redactions have been made per 10th Cir. R. 25.5;

2. if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3. the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Webroot Endpoint Protection CE 23.3© 2006-2023 (updated November 13, 2023), and according to the program are free of viruses.

November 13, 2023

<div align="center" style="margin-left:40%">

*s/ Laura Henrie*
Laura Henrie
Disability Law Center

*Attorney for Appellants*

</div>

**Certificate of Service**

I hereby certify that on 13th day of November, I electronically filed the foregoing *Reply Brief of Appellants* using the court's CM/ECF system which will send notification of such filing to the following:


Joan M. Andrews
jandrews@fabianvancott.com

Matthew S. Brahana
mbrahana@fabianvancott.com


<div align="right">

*s/ Laura Henrie*
Laura Henrie
Disability Law Center

*Attorney for Appellants*

</div>